Steven A. Marenberg (101033)
Victor Jih (186515)
Stephen M. Payne (310567)
**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276

Adam Levin (156773)
Jeremy Mittman (248854)
Jean Pierre Nogues (84445)
**MITCHELL SILBERBERG & KNUPP LLP**
2049 Century Park E., 18th Floor
Los Angeles, CA 90067

Attorneys for Plaintiff
UNITED TALENT AGENCY, LLC

Richard B. Kendall (90072)
Patrick J. Somers (318766)
Nicholas F. Daum (236155)
**KENDALL BRILL & KELLY LLP**
10100 Santa Monica Blvd., Suite 1725
Los Angeles, California 90067

Attorneys for Plaintiff
CREATIVE ARTISTS AGENCY, LLC.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| WILLIAM MORRIS ENDEAVOR ENTERTAINMENT, LLC, CREATIVE ARTISTS AGENCY, LLC and UNITED TALENT AGENCY, LLC,<br><br>Plaintiffs and Counterclaim Defendants,<br><br>v.<br><br>WRITERS GUILD OF AMERICA, WEST, INC. and WRITERS GUILD OF AMERICA, EAST, INC.<br><br>Defendants and Counterclaimants,<br><br>and PATRICIA CARR, *et al.*<br><br>Counterclaimants. | **Case No. 2:19-cv-05465-AB-AFM**<br><br>**JOINT SUPPLEMENTAL OPPOSITION OF PLAINTIFFS CREATIVE ARTISTS AGENCY, LLC AND UNITED TALENT AGENCY, LLC TO MOTION TO DISMISS OR FOR JUDGMENT ON THE PLEADINGS RE: LMRA SECTION 303 CLAIM (COUNT TWO)**<br><br>Hearing Date: December 6, 2019<br>Time: 10:00 a.m.<br>Courtroom: 7B<br>Judge: Hon. André Birotte Jr. |

# **TABLE OF CONTENTS**

**Page**

I. CAA AND UTA HAVE PLED A VIOLATION OF SECTION 303 ................... 1

    A. Coercion of Showrunners Violates Section 8(b)(4) ......................................... 1

    B. Coercion to Disaffiliate from Affiliates Violates Section 8(b)(4) .................. 4

    C. Inducing Employees Not To Work Violates Section 8(b)(4) ........................ 5

    D. The Guilds Do Not Have Immunity From Section 8(b)(4) ............................ 6

II. CONCLUSION ................................................................................................ 6

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Associated Gen. Contractors of California, Inc. v. N.L.R.B.*,
 514 F.2d 433 (9th Cir. 1975) .................................................................... 1, 5

*Chipman Freight Servs., Inc. v. NLRB*,
 843 F.2d 1224 (9th Cir. 1988) ......................................................................... 4

*Collins v. Nat'l Basketball Players Ass'n*,
 850 F. Supp. 1468 (D. Colo. 1991) ................................................................ 6

*East Bay Cty's Dry Cleaners*,
 167 NLRB 45 .................................................................................................. 6

*Harrah's Club v. NLRB*,
 446 F.2d 471 (9th Cir. 1971) ................................................................. 2, 3, 4

*Indep. Sports & Entm't, LLC v. Fegan*,
 2017 WL 2598550 (C.D. Cal. May 30, 2017) ............................................... 6

*Int'l Longshoremen's Ass'n v. Allied Int'l, Inc.*,
 456 U.S. 212 (1982) ....................................................................................... 5

*Iodice v. Calabrese*,
 512 F.2d 383 (1975) ....................................................................................... 6

*Limbach Co. v. Sheet Metal Workers Int'l Ass'n*,
 949 F.2d 1241 (3d Cir. 1991) ........................................................................ 5

*NLRB v. Servette, Inc.*,
 377 U.S. 46 (1964) ......................................................................................... 5

*Point Ruston, LLC v. Pac. Nw. Reg'l Council*,
 2010 WL 3584466 (W.D. Wash. Sept. 10, 2010) .......................................... 3

*Prime Healthcare Servs. v. Servs. Employees Int'l Union*,
 97 F. Supp. 3d 1169 (S.D. Cal. 2015) ........................................................... 5

*R.L. Coolsaet Const. Co. v. Local 150, Int'l Union of Operating Eng'rs*,
 177 F.3d 648 (7th Cir. 1999) ......................................................................... 5

*Sheet Metal Workers v. N.L.R.B.*,
    905 F.2d 417 (D.C. Cir. 1990) .............................................................................. 4, 6

*Tennessee Glass Co.*,
    164 NLRB 116 (1967) ........................................................................................ 2, 3

**Statutes**

29 U.S.C. §187 ................................................................................................................ 1

Labor-Management Relations Act, § 303 ................................................................. 1, 6

National Labor Relations Act, § 8(b)(4) ............................................................... *passim*

Plaintiffs Creative Artists Agency, LLC ("CAA") and United Talent Agency, LLC ("UTA") submit this supplemental opposition, addressing their second claim for relief under Section 303 of the Labor-Management Relations Act ("LMRA").[1]

## I. CAA AND UTA HAVE PLED A VIOLATION OF SECTION 303

LMRA Section 303, 29 U.S.C. §187, authorizes suits for damages for violations of Section 8(b)(4) of the National Labor Relations Act. Section 8(b)(4) prohibits a union from engaging in "secondary" economic coercion or activity against persons (including other employers and independent contractors) who are "neutrals between contending parties" in a labor dispute. *See, e.g., Associated Gen. Contractors of California, Inc. v. N.L.R.B.*, 514 F.2d 433, 437 (9th Cir. 1975).

Here, CAA and UTA allege that the Guilds improperly engaged in three kinds of activity that are, under long-standing law, "secondary" and prohibited. First, the WGA threatened and coerced showrunners and other independent contractors—persons who, by the WGA's own admission, *employ* other writers—by threatening them with dire consequences if they engage agents from CAA, UTA, or other agencies with whom the WGA has a dispute, ***even for their non-writing work as producers that the WGA has no authority to regulate***. FCC ¶ 195. Second, the Guilds threatened and coerced CAA, UTA, and other agencies to divest themselves from non-party affiliate studios such as wiip and Civic Center, thereby harming the business of those affiliates by depriving them of resources. FCC ¶¶ 76, 108, 194. Third, the Guilds targeted third-party production companies by prohibiting their WGA member-employees from writing for a television program "packaged" by a talent agency. FCC ¶ 197.

### A. Coercion of Showrunners Violates Section 8(b)(4)

The Guilds argue that their coercion of showrunners and other independent-contractor writers does not violate Section 8(b)(4) because these individuals, even if largely non-writers, are also (at least nominally) writers and WGA members, and

---

[1] The primary opposition ("Opp. Br.") to Defendants Writers Guild of America, West, Inc. and East, Inc. (the "Guilds" or "WGA") Motion to Dismiss or for Judgment on the Pleadings (the "Motion") is incorporated by reference in its entirety.

because the Guilds assert that their coercion is limited to pressuring these individuals in their capacity as employed writers and union members. Mot. at 23-24. Both contentions are unavailing.

First, as a matter of law, a union's coercion of a showrunner or other independent contractor, *in connection with their work as independent parties engaged in commerce or employers of others* (like showrunners working as employer-producers), violates Section 8(b)(4). This is true *even when* such showrunners or independent contractors are also WGA members. Settled Ninth Circuit law squarely so holds. *Harrah's Club v. NLRB*, 446 F.2d 471, 475 (9th Cir. 1971). *See also Tennessee Glass Co.*, 164 NLRB 116, 118-19 (1967) (holding that "where an individual is both a union member and an employing contractor" the union has no "privilege" to coerce the union member/employer into not doing business with a legitimate target of union activity). CAA and UTA have specifically alleged that the Guilds' directive to fire agents on pain of union discipline extends to members acting in their capacities as employer-producers, independent contractors, and other roles in which members are not writer-employees. FCC ¶¶ 59, 130, 195; FCC Ex. E (Guilds' FAQ stating "you cannot continue to be represented as a producer by an agency not signed to the Code of Conduct"). Accepting these allegations are true, WGA has violated Section 8(b)(4). Although WGA disputes the allegations, that is what trials—not Rule 12(b)(6) or 12(c) motions—are for.

More particularly, in *Harrah's*, 446 F.2d at 471, certain casinos had been struck by performers and their house bands represented by the American Federation of Musicians ("AFM"). *Id*. at 472-74. The casinos also contracted with top name entertainers, who were independent contractors or employers of AFM musicians, to perform for limited periods of time. *Id*. Some of these entertainers were also members of AFM; others were members of the American Guild of Variety Artists ("AGVA"). *Id*. Both AFM and AGVA notified all members that they were not to perform at the struck establishments on pain of discipline. *Id*. Charges were brought against both unions, alleging that their prohibitions constituted illegal secondary boycotts in

violation of Section 8(b)(4). *Id*. The Ninth Circuit held that both AFM and AGVA engaged in prohibited secondary activity when they coerced these contractors and employers to boycott the casinos. *Id*. at 476-77.

The Guilds try to distinguish *Harrah's* by misstating the facts and its holding. It is not true that the only actions found unlawful in *Harrah's* were AGVA's, and that this finding was based on there being "no reason" for the AGVA's members "to be involved in the dispute." Mot. at 23-24. To the contrary, *Harrah's* expressly held that self-employed members of the **primary union to the dispute**—the AFM—were (just like showrunners/independent contractors here) likewise neutrals and could not be lawfully coerced to cease doing business with others to promote union objectives. *Id*. at 476-77. Put differently, a union cannot coerce an independent contractor/employer to join a boycott on the basis that, in their capacity as a union member, the employer/contractor is a potential "stakeholder" in the underlying dispute. *Tennessee Glass*, 164 NLRB 116, 118-19 (so holding where the union prohibited union member-employers from doing business with a struck employer).

The Guilds also assert that showrunners/independent contractors may be coerced without violating Section 8(b)(4) because they are so-called "labor parties" under the antitrust laws. Mot. at 23. Not so. First, as discussed in Plaintiffs' antitrust opposition, the facts pled in the FCC, which must be accepted as true, demonstrate that showrunners *are **non**-labor parties under antitrust law. Opp. Br. at 12-14. In any event, WGA's contention improperly conflates antitrust and labor law. A union member who may be a "labor party" for purposes of the statutory labor exemption to the antitrust laws may also be (as in *Harrah's* and *Tennessee Glass*), an employer or an independent contractor protected as a "secondary" party from threats or coercion under Section 8(b)(4). *See*, *e.g.*, *Point Ruston, LLC v. Pac. Nw. Reg'l Council*, 2010 WL 3584466, at *5, 8 (W.D. Wash. Sept. 10, 2010) (dismissing claim involving "labor dispute" under Norris-LaGuardia Act, but not secondary boycott claim).

The Guilds rely on *Chipman Freight Servs., Inc. v. NLRB*, 843 F.2d 1224, 1227 (9th Cir. 1988). But the Guilds miss the key difference. In *Chipman*, the Ninth Circuit upheld NLRB determinations that union picketing of an (otherwise inarguably) "primary" employer during a strike by union employees was not transformed into a "secondary" boycott merely because the union was also picketing on behalf of union-affiliated independent contractors. 843 F.2d at 1227. But here, CAA and UTA's Section 8(b)(4) challenge is *not* to the WGA's general right to protest or picket. Rather, the challenge is to the WGA's **compulsion** of **employer showrunners/independent-contractors** to cease doing business with agencies on pain of reprisal.[2]

Finally, the Guilds dispute the Agencies' allegations concerning the scope and intent of their Code of Conduct. But CAA and UTA have pled that the Guilds' coercive acts were directed at **all** members in **many** contexts, including showrunner-employers, independent contractors who may be performing writing work (e.g., work on spec) outside of the collective bargaining agreement, and others. FCC ¶¶ 59, 195. And on a Rule 12 motion those facts must be accepted as true, thereby defeating the Motion.

### B. Coercion to Disaffiliate from Affiliates Violates Section 8(b)(4)

CAA and UTA have also alleged illegal secondary activity based on the Guilds' efforts to coerce them to divest their interests in production companies. The FCC alleges that the Guilds seek to seriously disrupt the business of the (non-party) affiliated production companies, by *inter alia* forcing CAA, UTA, and other agencies into completely divesting from these affiliates. FCC ¶¶ 76, 108, 185, 194. Under long-standing law, Section 8(b)(4) prohibits union threats to force one party to "cease doing business" with a third party. This prohibition extends to situations where the union forces "a primary employer [to exert] any pressure calculated to cause a significant change or disruption of the neutral employer's mode of business." *Sheet Metal Workers*

---

[2] The Ninth Circuit specifically explained that *Chipman* did **not** involve an "object of forcing a neutral businesses [like showrunners, independent contractors, and agency-affiliates] to cease doing business with another." *Chipman*, 843 F.2d at 1227. This case does involve that issue. It is therefore governed by the rule of *Harrah's*.

*v. N.L.R.B.*, 905 F.2d 417, 419-421 (D.C. Cir. 1990) (so holding where a union wrongly tried to coerce employer into dis-affiliating with non-unionized affiliates); *Assoc. Gen. Contrs.,* 514 F.2d at 437 n.6 ("[a]n attempt to cause a significant change in a secondary person's method of doing business" violates Section 8(b)(4)); *Limbach Co. v. Sheet Metal Workers Int'l Ass'n*, 949 F.2d 1241, 1246 (3d Cir. 1991).

The Guilds argue that they are targeting only agents' practices as agents, not the undermining of the affiliate companies. But this contention fails. CAA and UTA allege otherwise—and a "union's motive is a question of fact." *R.L. Coolsaet Const. Co. v. Local 150, Int'l Union of Operating Eng'rs*, 177 F.3d 648, 655 (7th Cir. 1999). Moreover, if "any" object of the union's coercive conduct is to pressure a secondary employer, then the conduct is illegal. *Prime Healthcare Servs. v. Servs. Employees Int'l Union*, 97 F. Supp. 3d 1169, 1195 (S.D. Cal. 2015).

### C. Inducing Employees Not To Work Violates Section 8(b)(4)

Third, CAA and UTA have alleged unlawful conduct under Section 8(b)(4)(i) based on the Guilds inducing writer-employees of studios/production companies not to perform certain work on programs that have been "packaged" by a talent agency, with the goal of pressuring the studios and other production companies to stop paying packaging fees to agents. FCC ¶ 197. This again is unlawful. *See Int'l Longshoremen's Ass'n v. Allied Int'l, Inc.*, 456 U.S. 212, 222-25 (1982). Clearly, unaffiliated studios and production companies (Disney, Sony Pictures, etc.) are secondary to the WGA's dispute, and the WGA does not argue otherwise. Instead, the WGA contends that CAA and UTA have not pled a violation because communications from WGA to writers cannot be threatening or coercive. (Dkt. 43-1 at 42, fn. 21.) But Section *8(b)(4)(i)* does not require threats or coercion. As *NLRB v. Servette, Inc.*, 377 U.S. 46 (1964), explains, there are "separate standards differentiating the treatment of appeals to the employees of the secondary employer not to perform their employment services," from appeals to the secondary employer. *Id.* at 53-54. While the latter must be "attended by threats, coercion or restraint," the former need not be. *Id.*

### D. The Guilds Do Not Have Immunity From Section 8(b)(4)

Finally, the Guilds assert that their ability to issue rules for their membership (and their members' agents) as writers' exclusive collective bargaining representatives under Section 9(a) of the NLRA immunizes their conduct here from challenge under Section 8(b)(4). That is not the law. The NLRB, with approval of the courts, has repeatedly rejected the self-serving argument that a union may do anything so long as it is guised as a rule for union membership or other exercise of the union's rights as exclusive representative. In *East Bay Cty's Dry Cleaners*, 167 NLRB 45 at 51-52, for example, the NLRB rejected the union's position that its exercise of the exclusive right to prescribe rules for its membership was immune to the requirements of Section 8(b)(4). The NLRB explained that even if there existed, as the union contended, a conflict between Section 8(b)(4) and the union's rule-making right as the collective bargaining representative, "this right must yield to the paramount objectives of the secondary boycott provisions of [Section 8(b)(4)]." *Id*. at 52. Courts have long held that an "exclusive" union right does not trump the secondary-activity ban of Section 8(b)(4). *Sheet Metal Workers*, 905 F.2d at 420 (union's exclusive bargaining right did not immunize it from Section 8(b)(4)'s ban on secondary activity); *Iodice v. Calabrese*, 512 F.2d 383, 388 (1975) (union not immunized from Section 8(b)(4) because it was exercising right to enforce collective bargaining terms). Unlike, *e.g.* the limited immunity from the antitrust laws found in the antitrust labor exemption, there is no immunity at all for a union from compliance with Section 8(b)(4).³

## II. CONCLUSION

For the foregoing reasons, the Guilds' Motion should be denied.

Dated: November 6, 2019    IRELL & MANELLA LLP
               MITCHELL SILBERBERG & KNUPP LLP

               By: */s/ Steven A. Marenberg*

---

³ *Collins v. Nat'l Basketball Players Ass'n*, 850 F. Supp. 1468, 1471 (D. Colo. 1991), aff'd, 976 F.2d 740 (10th Cir. 1992) and *Indep. Sports & Entm't, LLC v. Fegan*, 2017 WL 2598550 (C.D. Cal. May 30, 2017) do not even involve Section 303 claims.

Steven A. Marenberg (101033)
smarenberg@irell.com
Victor Jih (186515)
vjih@irell.com
Stephen M. Payne (310567)
spayne@irell.com
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Telephone: (310) 277-1010
Facsimile: (310) 203-7199

Adam Levin (156773)
axl@msk.com
Jeremy Mittman (248854)
j2m@msk.com
Jean Pierre Nogues (84445)
jpn@msk.com
2049 Century Park E., 18th Floor
Los Angeles, CA 90067
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

Attorneys for Plaintiff
UNITED TALENT AGENCY, LLC

Dated: November 6, 2019            KENDALL BRILL & KELLY LLP

                                   By:  */s/ Richard B. Kendall*
                                        Richard B. Kendall (90072)
                                        rkendall@kbkfirm.com
                                        Patrick J. Somers (318766)
                                        psomers@kbkfirm.com
                                        Nicholas F. Daum (236155)
                                        ndaum@kbkfirm.com
                                        Sarah E. Moses (291491)
                                        smoses@kbkfirm.com
                                        10100 Santa Monica Blvd., Suite 1725
                                        Los Angeles, California 90067
                                        Telephone: 310.556.2700
                                        Facsimile: 310.556.2705

                                        Attorneys for Plaintiff
                                        CREATIVE ARTISTS AGENCY, LLC