1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| WILLIAM MORRIS ENDEAVOR ENTERTAINMENT, LLC, CREATIVE ARTISTS AGENCY, LLC and UNITED TALENT AGENCY, LLC,<br><br>　　　Plaintiffs and<br>　　　Counterclaim-Defendants,<br><br>　v.<br><br>WRITERS GUILD OF AMERICA, WEST, INC. and WRITERS GUILD OF AMERICA, EAST, INC.,<br><br>　　　Defendants and<br>　　　Counterclaimants,<br><br>and PATRICIA CARR, ASHLEY GABLE, BARBARA HALL, DERIC A. HUGHES, DEIRDRE MANGAN, DAVID SIMON, and MEREDITH STIEHM,<br><br>　　　Counterclaimants. | **Case No. 2:19-cv-05465-AB-AFM**<br><br>**[PROPOSED] ORDER GRANTING PLAINTIFFS AND COUNTERCLAIM-DEFENDANTS WILLIAM MORRIS ENDEAVOR ENTERTAINMENT, LLC'S, CREATIVE ARTISTS AGENCY, LLC'S, AND UNITED TALENT AGENCY, LLC'S NOTICE OF MOTION AND MOTION TO DISMISS COUNTERCLAIMANTS' CONSOLIDATED COUNTERCLAIMS** |

**[PROPOSED] ORDER**

Plaintiffs and Counterclaim-Defendants William Morris Endeavor Entertainment, LLC ("WME"), Creative Artists Agency, LLC ("CAA") and United Talent Agency, LLC ("UTA") (collectively, "Plaintiffs", "Counterclaim Defendants", or "the Agencies") motion to dismiss Counterclaims (ECF No. 44) filed by Defendants and Counterclaimants Writers Guild of America, West, Inc. ("WGAW") and Writers Guild of America, East, Inc. ("WGAE," collectively with WGAW, the "Guilds" or "WGA") and Counterclaimants Meredith Stiehm, Patricia Carr, Ashley Gable, Barbara Hall, Deric A. Hughes, Deirdre Mangan, and David Simon ("Individual Counterclaimants") (collectively with WGA, "Counterclaimants") was heard on January 17, 2020, the Honorable André Birotte Jr. presiding. Having considered all papers, pleadings, and evidence submitted, and the oral argument presented, and good cause appearing, the Court finds:

**Counterclaimants' price-fixing and group boycott claims are dismissed because Counterclaimants have not alleged antitrust standing**. Counterclaimants fail to plead antitrust standing under *Associated General Contractors of California v. California State Council of Carpenters*, 459 U.S. 519 (1983) ("*AGC*") and *Eagle v. Star-Kist Foods, Inc.*, 812 F.2d 540 (9th Cir. 1987). First, Counterclaimants allege agency price-fixing of packaging fees but, critically, neither the Guilds nor Individual Counterclaimants buy or sell packages *or* compete with the agencies. Thus, no Counterclaimant is a buyer or seller of packages, and any injuries they claim would be "merely derivative" of any overcharges paid by the studios for packages. Second, Counterclaimants assert that the purported boycott "artificially reduced choice of agents and agencies to represent" the Guilds' members, but the Guilds do not seek representation from talent agents and thus are not "consumer[s] of the alleged violator's goods or services." *Eagle*, 812 F.2d at 540. Individual Counterclaimants too lack antitrust standing to pursue the group boycott claim because their allegations are based on a speculative chain of events that are contradicted by Counterclaimants' own

allegations that the Agencies have always opposed the WGA's Code of Conduct and thus would not agree to it. *E.g.*, A&C ¶ 382. Moreover, the Individual Counterclaimants fired the Agencies *before* the alleged group boycott supposedly began. Third, *AGC* standing also cannot be shown under either the price-fixing or group boycott claims because they present impossible "problems of identifying damages and apportioning them among [direct victims] . . . and indirectly affected employees and union entities." *AGC*, 459 U.S. at 545; *Eagle*, 812 F.2d at 542–43. Finally, the Guilds' claims about "receiv[ing] lower dues payments" (e.g., A&C ¶ 471) were expressly rejected in *AGC* and *Eagle*. *AGC*, 459 U.S. at 541 n.46; *Eagle*, 812 F.2d at 542-43.

**Counterclaimants' price-fixing and group boycotts are dismissed because Counterclaimants also fail to plausibly allege any conspiratorial agreement**. As in *Lenhoff Enterprises, Inc. v. United Talent Agency, Inc.*, 729 F. App'x 528, 530 (9th Cir. 2018), Counterclaimants' conclusory allegations that the Agencies have "conspired to raise … the price of talent representational services" (A&C ¶ 409) do not support a conspiracy claim because they do "not answer the basic questions: who, did what, to whom (or with whom), where, and when?" *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1048 (9th Cir. 2008). And Counterclaimants' group boycott conspiracy theory also fails because each of the three categories of factual allegations upon which this claim is based is insufficient to state a plausible group boycott conspiracy claim. First, alleging mere opportunities to conspire at a trade association (A&C ¶ 418) is legally insufficient to support a conspiracy claim. Second, alleged statements (*Id.* ¶ 394) by individual ATA members and the ATA Executive Director that it would be beneficial for the Guilds to continue to negotiate over a new franchise agreement through the Guilds does nothing to nudge the group boycott conspiracy theory from conceivable to plausible. Third, allegations concerning wholly conclusory and unspecified "threats of retaliation" (*Id.* ¶¶ 359-361, 395) fail because the Guilds do not allege a single specific retaliatory act taken against anyone, let alone one of the "at least 70 talent agencies . . . [that] have signed the Code of Conduct." *Id.* ¶ 151. Finally, Counterclaimants claim an unlawful

group boycott only after June 19, 2019 but allege few facts at all after that date. And, because Counterclaimants allege that the price-fixing conspiracy began "in the 1990s," (A&C ¶ 349-50) their one specific allegation about anonymized data sharing in March 2019 (A&C ¶ 356-57) is irrelevant.

**Counterclaimants' Cartwright Act claims fail for the same reasons as their Sherman Act claims**: (i) lack of antitrust standing (*In re Dynamic Random Access Memory (Dram) Antitrust Litig.*, 516 F. Supp. 2d 1072, 1093 (N.D. Cal. 2007) (applying *AGC* factors to Cartwright Act)); and (ii) failure to plausibly allege facts to show any conspiratorial agreement. *Lenhoff*, 729 App'x at 531 (determination that conduct does not violate Sherman Act "necessarily implies that the conduct is not unlawful under the Cartwright Act").

**Counterclaimants' RICO claims are also dismissed**. Counterclaimants' RICO claims, like their antitrust claims, are based upon the payment of fees for packaging services by the studios to the Agencies that neither the Guilds nor Individual Counterclaimants buy or sell. A&C ¶¶ 424-476. Because antitrust standing requirements apply with equal force to RICO, *see Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 267-68 (1992), the RICO claims fail under the antitrust standing analysis in *AGC* and *Eagle*, as previously held. Relatedly, Counterclaimants have not plausibly alleged that any injury they claim to have suffered was proximately caused by any RICO violation because there is no "direct relation" between a packaging fee paid to the Agencies by a production studio and any injury to Individual Counterclaimants (much less to their union). *Canyon Cty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 981 (9th Cir. 2008) ("Proximate causation requires 'some direct relation between the injury asserted and the injurious conduct alleged.'") (citations omitted).

Even if Counterclaimants had standing to bring their RICO claims, or had pleaded proximate causation, the predicate act that they allege—a violation of Section 302 of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 186—has no application to talent agency packaging as a matter of law. Section 302 is intended to

protect the integrity of collective bargaining by prohibiting "kickbacks" (bribes) to union officials—not the commercial practice of purchasing packaging services from talent agents. *See Oregon Teamster Employers Trust v. Hillsboro Garbage Disposal, Inc.*, 800 F. 3d 1151, 1157 (9th Cir. 2015) (quotations omitted). Thus, Section 302 does not apply to the receipt of packaging fees by talent agents.

Furthermore, Counterclaimants' factual averments about the Agencies' packaging are so conclusory that they do not state a predicate racketeering act in any event. *See U.S. v. Bloch*, 696 F. 2d 1213, 1216 (9th Cir. 1982).

**[The Court declines to exercise supplemental jurisdiction over Counterclaimants' remaining state law claims.]**

**[The Court exercises supplemental jurisdiction over, and dismisses, Counterclaimants' remaining state law claims.]** Counterclaimants' breach of fiduciary duty, constructive fraud, and UCL claims are insufficiently pled and are therefore dismissed.

**The Guilds may not assert associational standing to claim damages on behalf of their members**. An organization has associational standing to bring suit on behalf of its members only if, among other things, "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977). Here, both the damages "relief requested" and the "claim asserted" would necessarily require the participation of 14,700 writer-members which makes associational standing impossible. *Id.*

**The Guilds lack Article III standing to assert a UCL claim**. The only types of harm that the Guilds allege they suffered under their UCL claim concern derivative and speculative injuries like monitoring costs and the possibility of recouping less dues from members, because of alleged harm from packaging to those members. A&C ¶¶ 337-338. Counterclaimants do not "clearly . . . allege facts demonstrating" (1) an "injury in fact" (2) that is "fairly traceable to the challenged conduct of the defendant"

and (3) "likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016) (citation omitted).

**Individual Counterclaimants' state law claims are dismissed.** Counterclaimants' breach of fiduciary duty, constructive fraud, and UCL claims, as well as Counterclaimant Barbara Hall's breach of oral contract and promissory estoppel claims against UTA, are insufficiently pled and are therefore dismissed.

**Individual Counterclaimants each fail to allege a breach of fiduciary duty**. A claimant must plausibly allege facts sufficient to establish (1) the existence of a fiduciary duty; (2) a breach of the duty; and (3) damages proximately caused by the breach. *Tribeca Companies, LLC v. First American Title Ins. Co.*, 239 Cal. App. 4th 1088, 1114 (2015). Individual Counterclaimants Meredith Stiehm, Patricia Carr, Ashley Gable, Barbara Hall, Deric A. Hughes, and Deirdre Mangan allege no facts about WME, CAA, or UTA breaching any fiduciary duty or proximately causing an injury to Individual Counterclaimants on any package. Their efforts to plead proximately caused damages fare no better because they fail to allege what, if anything, comprises those supposedly lost wages or employment opportunities, how WME, CAA, or UTA supposedly caused them, if Individual Counterclaimants were better off saving the 10% commission for being part of a package, or if any of Individual Counterclaimants packaging projects would have even existed if not for WME, CAA or UTA assembling a package of talent.

**Individual Counterclaimants fail to allege a breach of constructive fraud**. Individual Counterclaimants' constructive fraud claim fails with the breach of fiduciary duty claim because they have the same substantive elements. *Younan v. Equifax Inc.*, 111 Cal. App. 3d 498, 516 n.14 (1980); Cal. Civ. Code § 1573. The constructive fraud claim additionally fails because Individual Counterclaimants have not satisfied the heightened pleading requirements of Rule 9(b). *Sonoma Foods, Inc. v. Sonoma Cheese Factory, LLC*, 634 F. Supp. 2d 1009, 1021(N.D. Cal. 2007). As already held, Individual Counterclaimants have not pleaded any elements of their individual claims with non-

conclusory facts—let alone with the specificity required of a claim sounding in fraud.

**Counterclaimant Barbara Hall fails to allege breach of oral contract or promissory estoppel claims against UTA.** Counterclaimant Barbara Hall's breach an oral contract and promissory estoppel claims (A&C ¶¶ 595, 601) against UTA are legally defective. Both are barred by the statute of frauds, since Hall's alleged oral agreement with UTA was, by its terms not to be performed within a year from the making thereof. Cal. Civ. Code § 1624(a); *see Tostevin v. Douglas*, 160 Cal. App. 2d 321, 327–328 (1958). Hall's promissory estoppel claim is further defective because she does not adequately allege detrimental reliance. *See Orcilla v. Big Sur, Inc.*, 244 Cal. App. 4th 982, 1007 (2016) (dismissing promissory estoppel claim where plaintiff "fail[ed] to allege injury caused by any reliance on the promise").

**Counterclaimants fail to allege violations of the UCL**. Counterclaimants allege three "unlawful" UCL violations: (i) fiduciary duty, (ii) constructive fraud, and (iii) Section 302. A&C ¶¶ 413, 414, 416. Counterclaim-Defendants have already demonstrated that Counterclaimants' fiduciary duty and constructive fraud claims, and their Section 302 theory, are all legally defective.

Counterclaimants also fail to satisfy any of the potentially applicable tests for "unfairness" under the UCL:

• *Balancing test*. Under the balancing test, the "unfairness" prong requires "weigh[ing] the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012) (internal quotes omitted). The Counterclaims could not pass this test in light of Counterclaimants' own allegations about the benefits of packaging.

• *Public policy test*. Under the public policy test, "unfairness must be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition." *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 735 (9th Cir. 2007) (internal quotes omitted). Counterclaimants do not allege any nexus between the Agencies' conduct and any legislatively declared policy.

• *FTC test*. Finally, the Counterclaims fail under the "FTC test," requiring that "the consumer injury is substantial, is not outweighed by any countervailing benefits to consumers or to competition, and is not an injury the consumers themselves could reasonably have avoided." *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1137 (N.D. Cal. 2010). Counterclaimants do not allege plausible facts of any substantial injury to consumers; nor that any such injury would not be outweighed by "countervailing benefits to consumers"; nor do they allege facts to show that they could not "reasonably have avoided" the injury. *Id*.

**The declaratory relief claim is dismissed**. "A declaratory relief cause of action cannot survive a motion to dismiss when the substantive claims on which it is based are dismissed […]." *Bates v. Suntrust Mortg., Inc.*, 2013 WL 6491528, at *2 (E.D. Cal. Dec. 10, 2013).

Therefore, **IT IS HEREBY ORDERED THAT** Counterclaim-Defendants' motion to dismiss is **GRANTED**.

Because Counterclaimants have already had multiple chances to assert these claims against Counterclaim-Defendants, and because leave to amend would be futile given the fatal standing and other legal defects, the Counterclaims are **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

Dated: _____  _____
Hon. André Birotte Jr.
United States District Judge