Steven A. Marenberg (101033)
Victor Jih (186515)
Stephen M. Payne (310567)
**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276

Adam Levin (156773)
Jeremy Mittman (248854)
Jean Pierre Nogues (84445)
**MITCHELL SILBERBERG & KNUPP LLP**
2049 Century Park E., 18th Floor
Los Angeles, CA 90067

Attorneys for Plaintiff/Counterclaim-Defendant
UNITED TALENT AGENCY, LLC

Jeffrey L. Kessler (*pro hac vice*)
David L. Greenspan (*pro hac vice*)
Isabelle Mercier-Dalphond (*pro hac vice*)
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, NY 10166-4193

Diana Hughes Leiden (267606)
Shawn Obi (288088)
**WINSTON & STRAWN LLP**
333 South Grand Avenue, 38th Floor
Los Angeles, CA  90071-1543

Attorneys for Plaintiff/Counterclaim-Defendant
WILLIAM MORRIS ENDEAVOR
ENTERTAINMENT, LLC

Richard B. Kendall (90072)
Patrick J. Somers (318766)
Nicholas F. Daum (236155)
**KENDALL BRILL & KELLY LLP**
10100 Santa Monica Blvd., Suite 1725
Los Angeles, California 90067

Attorneys for Plaintiff/Counterclaim-Defendant
CREATIVE ARTISTS AGENCY, LLC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM MORRIS ENDEAVOR ENTERTAINMENT, LLC, CREATIVE ARTISTS AGENCY, LLC and UNITED TALENT AGENCY, LLC,<br><br>             Plaintiffs and<br>             Counterclaim-Defendants,<br><br>     v.<br><br>WRITERS GUILD OF AMERICA, WEST, INC. and WRITERS GUILD OF AMERICA, EAST, INC.,<br><br>             Defendants and<br>             Counterclaimants,<br><br>and PATRICIA CARR, *et al.*,<br><br>             Counterclaimants. | Case No. 2:19-cv-05465-AB-AFM (FFMx)<br><br>**PLAINTIFFS AND COUNTERCLAIM-DEFENDANTS WILLIAM MORRIS ENDEAVOR ENTERTAINMENT, LLC'S, CREATIVE ARTISTS AGENCY, LLC'S, AND UNITED TALENT AGENCY, LLC'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS COUNTERCLAIMANTS' CONSOLIDATED COUNTERCLAIMS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:  January 17, 2020<br>Time: 10:00 a.m.<br>Courtroom: 7B |

# **TABLE OF CONTENTS**

Page(s)

I.     INTRODUCTION ............................................................................................. 1

II.    ARGUMENT ..................................................................................................... 1

    A.    Counterclaimants Lack Antitrust Standing ................................................. 1

        1.    Counterclaimants Lack Antitrust Standing to Sue for Alleged "Price-Fixing" of Packages That They Do Not Buy or Sell ........... 1

        2.    Counterclaimants Lack Antitrust Standing to Sue Over an Alleged Group Boycott That Is Not Causally Connected to Their Claimed Injuries ........................................................................................ 4

    B.    Counterclaimants Do Not Plead an Anticompetitive Agreement ............. 6

        1.    Lenhoff Bars Counterclaimants' Price-Fixing Claim ...................... 6

        2.    The Group Boycott Conspiracy Is Not Plausibly Pled ................... 8

    C.    The RICO Claims Should Be Dismissed ................................................. 9

        1.    Counterclaimants Lack RICO Standing ......................................... 9

        2.    Packaging Does Not Constitute a RICO Predicate Act Because It Does Not Violate the LMRA ......................................................... 10

    D.    Counterclaimants' State Law Claims Are Each Legally Defective ........ 13

        1.    The Guilds Lack Associational Standing to Assert Their Breach of Fiduciary Duty and Constructive Fraud Claims ............................ 13

        2.    Individual Counterclaimants' State Law Claims Similarly Fail on Numerous Grounds ........................................................................ 17

        3.    All of the Counterclaimants Fail to State the Required Elements of a UCL Cause of Action .................................................................. 18

            (a)    The Guilds Cannot Obtain a UCL Injunction .................... 18

            (b)    Counterclaimants Have Not Pled a Violation of the "Unlawful" Prong ............................................................... 19

            (c)    Counterclaimants Also Have Not Pled a Violation of the "Unfair" Prong ................................................................... 20

III.           CONCLUSION ......................................................................................... 20

i

COUNTERCLAIM-DEFENDANTS' MOTION TO DISMISS COUNTERCLAIMANTS' CONSOLIDATED COUNTERCLAIMS
CASE NO. 2:19-CV-05465-AB-AFM (FFMx)

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Ad. Mgmt., Inc. v. Gen. Tel. Co. of Cal.*,
  190 F.3d 1051 (9th Cir. 1999) ................................................................... 3

*Amalgamated Transit Union, Local 1756 v. Superior Court*,
  46 Cal. 4th 993 (2009) ............................................................................. 19

*Arroyo v. United States*,
  359 U.S. 419 (1959)............................................................................ 11, 13

*Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*,
  459 U.S. 519 (1983)........................................................................ 1, 2, 3, 9

*Barthelemy v. Air Lines Pilots Ass'n*,
  897 F.2d 999 (1990) ................................................................................ 11

*BASF Wyandotte Corp. v. Local 227*,
  791 F.2d 1046 (2d Cir. 1986) .................................................................. 12

*Berryman v. Merit Prop. Mgmt., Inc.*,
  152 Cal. App. 4th 1544 (2007) .......................................................... 19, 20

*Blue Shield of Virginia v. McCready*,
  457 U.S. (1982)..................................................................................... 3, 4

*Brignac v. Yelp Inc.*,
  No. 19-CV-01188-EMC, 2019 WL 2372251 (N.D. Cal. June 5, 2019) ................. 10

*Caltex Plastics, Inc. v. Lockheed Martin Corp.*
  824 F.3d 1156 (9th Cir. 2016) .......................................................... 19, 20

*Chavez v. Whirlpool Corp.*,
  93 Cal. App. 4th 363 (2001) ................................................................... 20

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (2003)................................................................................... 14

*Depot, Inc. v. Caring for Montanans, Inc.*,
  915 F.3d 643 (9th Cir. 2019) .................................................................. 18

ii

COUNTERCLAIM-DEFENDANTS' MOTION TO DISMISS COUNTERCLAIMANTS' CONSOLIDATED COUNTERCLAIMS
CASE NO. 2:19-CV-05465-AB-AFM (FFMx)

*Desert Outdoor Advert. v. Superior Court*,
  196 Cal. App. 4th 866 (2011) ................................................................. 16

*Diaz v. Gates*,
  420 F.3d 897 (9th Cir. 2005) .................................................................. 10

*Eagle v. Star-Kist Foods, Inc.*,
  812 F.2d 538 (9th Cir. 1987) ...........................................................*passim*

*Eclectic Properties E., LLC v. Marcus & Millichap Co.*,
  751 F.3d 990 (9th Cir. 2014) ................................................................... 2

*EduMoz, LLC v. Republic of Mozambique*,
  2014 WL 12802921 (C.D. Cal. Jul. 21, 2014) ....................................... 18

*In re: Electronic Books Antitrust Litigation*,
  859 F. Supp. 2d 671 (S.D.N.Y. 2012) ...................................................... 8

*Gest v. Bradbury*,
  443 F.3d 1177 (9th Cir. 2006) ............................................................... 10

*Gordon v. Aerotek, Inc.*,
  2017 WL 8217410 (C.D. Cal. Oct. 12, 2017) ........................................ 14

*Hadley v. Kellogg Sales Co.*,
  243 F. Supp. 3d 1074 (N.D. Cal. 2017) ................................................. 20

*Hangarter v. Provident Life & Acc. Ins. Co.*,
  373 F.3d 998 (9th Cir. 2004) ........................................................... 14, 18

*Hanson v. Shell Oil Co.*,
  541 F.2d 1352 (9th Cir. 1976) ................................................................. 8

*Hodgers-Durgin v. de la Vina*,
  199 F.3d 1037 (9th Cir. 1999) ............................................................... 14

*Holmes v. Sec. Investor Protection Corp.*,
  503 U.S. 258 (1992) ................................................................................. 9

*Hunt v. Wash. Apple Advertising Comm'n*,
  432 U.S. 333 (1977) ............................................................................... 15

*JTC Petroleum Co. v. Piasa Motor Fuels, Inc.*,
  190 F.3d 775 (7th Cir. 1999) ................................................................... 8

*Kendall v. Visa U.S.A., Inc.*,
   518 F.3d 1042 (9th Cir. 2008) ................................................................. 8

*Knevelbaard Dairies v. Kraft Foods, Inc.*,
   232 F.3d 979 (9th Cir. 2000) ................................................................... 6

*Knutson v. Foster*,
   25 Cal. App. 5th 1075 (2018), *review denied* (Nov. 20, 2018) .............. 17

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal. 4th 1134 (2003) ......................................................................... 19

*Korholz v. United States*,
   269 F.2d 897 (10th Cir. 1959) ............................................................... 13

*Lenhoff v. United Talent Agency, Inc.*,
   729 F. App'x 528 (9th Cir. 2018) .................................................... 1, 6, 7

*Levi v. Murrell*,
   63 F.2d 670 (9th Cir. 1933) ................................................................... 18

*LiveUniverse, Inc. v. MySpace, Inc.*,
   304 F. App'x 554 (9th Cir. 2008) .......................................................... 20

*Mkt. Lofts Cmty. Ass'n v. 9th St. Mkt. Lofts, LLC*,
   222 Cal. App. 4th 924 (2014) ................................................................ 16

*Mosier v. S. Cal. Phys. Ins. Exch.*,
   63 Cal. App. 4th 1022 (1998) ................................................................ 16

*In re Musical Instruments*,
   798 F.3d 1186 (9th Cir. 2015) ......................................................... 7, 8, 9

*N.J. Protection & Advocacy, Inc. v. N.J. Dep't of Educ.*,
   563 F. Supp. 2d 474 (D.N.J. 2003) ........................................................ 16

*Name Space, Inc. v. ICAAN*,
   795 F.3d 1124 (9th Cir. 2015) ................................................................. 9

*In re NASDAQ Market-Makers Antitrust Litig.*,
   169 F.R.D. 493 (S.D.N.Y. 1996) ............................................................. 2

*Oncale v. Sundowner Offshore Servs.*,
   523 U.S. 75 (1998) ................................................................................. 11

*Oregon Columbia Brick Masons v. Gardner*,
448 F.3d 1082 (9th Cir. 2006) ...................................................................... 13

*Oregon Teamsters Emp. Trust v. Hillsboro Garbage Disposal, Inc.*,
800 F.3d 1151 (9th Cir. 2015) ...................................................................... 11

*Pa. Psych. Soc'y v. Green Spring Health Servs.*,
280 F.3d 278 (3d. Cir. 2002) ........................................................................ 15

*Patt v. Antech Diagnostics, Inc.*,
2019 WL 6654078 (C.D. Cal. July 30, 2019) ............................................. 20

*Pers. Elec. Transports, Inc. v. Office of U.S. Tr.*,
313 F. App'x 51 (9th Cir. 2009) ..................................................................... 1

*Peter v. Nantkwest, Inc.*,
No. 18-801, 2019 WL 6719083 (U.S. Dec. 11, 2019) ............................... 11

*Pharmaceutical Care Management Ass'n v. Rowe*,
429 F.3d 294 (1st Cir. 2005) .................................................................. 15, 16

*Prakashpalan v. Engstrom, Lipscomb & Lack*,
223 Cal. App. 4th 1105 (2014) ........................................................ 15, 16, 17

*Rest. Law Ctr. v. City of New York*,
360 F. Supp. 3d 192 (S.D.N.Y. 2019) ......................................................... 12

*Ry. Labor Executives Ass'n v. Dole*,
760 F.2d 1021 (9th Cir. 1985) ...................................................................... 15

*San Diego Cty. Gun Rights Comm. v. Reno*,
98 F.3d 1121 (9th Cir. 1996) ........................................................................ 15

*Scott v. Long Island Sav. Bank, F.S.B.*,
937 F.2d 738 (2d Cir. 1991) ......................................................................... 20

*Secrest v. Security Nat'l Mortgage Loan Trust
2002-2*, 167 Cal. App. 4th 544 (2008) ........................................................ 18

*United Auto., Aerospace & Agric. Implement Workers v. Hardin Cty.,
Kentucky*,
842 F.3d 407 (6th Cir. 2016) ....................................................................... 19

v

COUNTERCLAIM-DEFENDANTS' MOTION TO DISMISS COUNTERCLAIMANTS' CONSOLIDATED COUNTERCLAIMS
CASE NO. 2:19-CV-05465-AB-AFM (FFMx)

*United Farmers Agents Ass'n, Inc. v. Farmers Grp., Inc.*,
   32 Cal. App. 5th 478 (2019) ........................................................................ 15

*United Mine Workers of Am. v. Gibbs*,
   383 U.S. 715 (1966)...................................................................................... 20

*United States v. Dorsey*,
   2015 WL 847395 (C.D. Cal. Feb. 23, 2015) ................................................. 6

*United States v. Millis*,
   621 F.3d 914 (9th Cir. 2010) ...................................................................... 12

*United States v. Ryan*,
   350 U.S. 299 (1956)...................................................................................... 13

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) .................................................................... 18

*Yanez v. Plummer*,
   221 Cal. App. 4th 180 (2013) ..................................................................... 17

**Statutes**

Cartwright Act ..................................................................................... 6, 9, 20

Disabilities Education Act ......................................................................... 16

Railway Labor Act ...................................................................................... 11

RICO .................................................................................................... *passim*

Sherman Act................................................................................................ 3, 7

## MEMORANDUM OF POINTS AND AUTHORITIES[1]

## I.    INTRODUCTION

Tellingly, Counterclaimants' Opposition (Dkt. No. 67) buries the defense of their federal causes of action—the claims that should be this Court's first order of business—at the end.  But there is no hiding from the reality that Counterclaimants' antitrust and RICO claims fail.  The Guilds and individual writers have no standing to bring their antitrust and RICO claims (under *AGC* and *Eagle*).  The antitrust claims fail also because there are no plausible allegations of conspiracy (under *Lenhoff*), and the RICO claims additionally fail because Agencies accepting packaging fees is not a predicate criminal RICO act (under *any* LMRA Section 302 precedent).

Once the federal claims are dismissed, the supplemental state law claims may (and should) be remanded back to the Superior Court.  If, however, this Court exercises its discretion to adjudicate the state law claims, it will find that they too fail, from a clear lack of associational standing and for multiple other reasons.[2]

## II.    ARGUMENT

### A.    Counterclaimants Lack Antitrust Standing

#### 1.    Counterclaimants Lack Antitrust Standing to Sue for Alleged "Price-Fixing" of Packages That They Do Not Buy or Sell

Under *AGC*'s and *Eagle*'s controlling and "demanding" standards, *Eagle v. Star-Kist Foods, Inc.*, 812 F.2d 538, 540 (9th Cir. 1987), no Counterclaimant possesses antitrust standing to sue over allegedly price-fixed packaging fees that Counterclaimants now concede the *studios pay*: in "*all* packaging fee deals, *the studio pays* for the representational services of the agent hired by the writer."  Opp. at 24 (second emphasis added); *Associated Gen. Contractors of Cal. v. Cal. State Council of*

---

[1] Defined terms herein have the same meaning as in the Agencies' Motion to Dismiss Counterclaimants' Consolidated Counterclaims ("Motion").  Dkt. No. 54.

[2] Counterclaimants persistently conflate the Guilds' and the Individual Counterclaimants' claims—but they must be assessed separately.  In addition, the Opposition ignores dispositive legal arguments set forth in the Agencies' Motion, which are therefore waived.  *Pers. Elec. Transports, Inc. v. Office of U.S. Tr.*, 313 F. App'x 51, 52-53 (9th Cir. 2009).

1

COUNTERCLAIM-DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS COUNTERCLAIMANTS' CONSOLIDATED COUNTERCLAIMS – CASE NO. 2:19-CV-05465-AB-AFM (FFMx)

*Carpenters*, 459 U.S. 519, 538-45 (1983) ("*AGC*").  This concession is fatal to the price-fixing claim.  Any injury that the Guilds, Individual Counterclaimants, or any other Guild member would have suffered from price-fixing packaging fees would be derivative of those suffered by the studios—the direct victims of the alleged conspiracy. *Eagle*, 812 F.2d at 541.

Counterclaimants try in vain to distinguish *Eagle* by arguing that "Guild members dealt directly with both the studios and the Agencies on the same [packaging] transaction."  Opp. at 28.  But Counterclaimants do not allege that writers are in the market to buy or sell packages; nor do they plausibly allege that they "dealt directly with both the studios and the Agencies on the same [packaging] transaction."  Opp. at 28.  In fact, they allege the opposite: first, that individual writers have their own employment contracts with studios (A&C ¶¶ 270-271); and, second, that "the packaging agreement ... is negotiated directly between an Agency and the studio."  *Id.* ¶ 333; *see also id.* ¶¶ 271, 278.  Counterclaimants allege that "virtually no writer has ever *seen* a packaging agreement" (*id.* ¶ 333), so they cannot now contradict themselves and plausibly claim that writers are part of the "same [packaging] transaction" that the Agencies supposedly price-fixed.[3]  *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 999 (9th Cir. 2014) (refusing "to draw '*implausible*' inferences").[4]

As for the standing of the Guilds themselves, they offer no response to the

---

[3] As Counterclaimants allege (*e.g.*, A&C ¶¶ 186, 274), packaging involves Agencies compiling writer and *non*-writer talent and selling the package to the studios.  It is thus implausible to contend that there is a single transaction covering the agency's packaging fee *and* each of the packaged element's terms and conditions of employment.

[4] Counterclaimants cite *NASDAQ* for the proposition that "agents are not distinct economic entities for purposes of antitrust standing, since they facilitate a transaction rather than constitute a separate step in the distribution chain."  *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 505 (S.D.N.Y. 1996).  But unlike the brokers in *NASDAQ*, Agencies provide a "bundle of services" and take on other independent duties as part of packaging agreements with the studios.  *Cf. id.* at 506 (finding standing because "[t]he brokers who purchased securities on behalf of investors did not incorporate those securities into a bundle of services that was then provided to the investors").  Indeed, the basis of the Guilds' objection to packaging is that Agencies are *not* acting or being compensated as "mere sale agents."  *Id.* at 505; A&C ¶¶ 275, 278.

2

COUNTERCLAIM-DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS COUNTERCLAIMANTS' CONSOLIDATED COUNTERCLAIMS – CASE NO. 2:19-CV-05465-AB-AFM (FFMx)

1    Supreme Court's statement in *AGC* that "a union, in its capacity as bargaining

2    representative, will frequently not be part of the class the Sherman Act was designed to

3    protect." *AGC*, 459 U.S. at 540.  Further, *AGC* and *Eagle* squarely reject the Guilds'

4    claims for lost union dues (*e.g.*, A&C ¶ 471) because they are "even more indirect than

5    the already indirect injury to its members." *AGC*, 459 U.S. at 541 n.46; *see also Eagle*,

6    812 F.2d at 542-43 ("lost union dues" were derivative of "any injury suffered by the

7    vessel owners").  And the Guilds' alleged injury for expending resources to "monitor[]"

8    packaging (A&C ¶ 337) is even more remote than the union claims held insufficient to

9    confer standing in *AGC* (not to mention something that labor law requires unions to do

10   anyway, *see* Opp. at 19).

11       Nor may the Guilds assert any price-fixing claims "on behalf of their members."

12   A&C, Claims One-Four.  As discussed above, individual writers *themselves* lack

13   standing for such claims.  And, the treble damages claims of more than 14,700 Guild

14   members cannot be adjudicated on an associational basis without their individual

15   participation and thus lack standing as a matter of law.  Mot. 21-22; *infra*, § II.D.1.

16       Unable to distinguish *AGC* and *Eagle*, Counterclaimants try to base antitrust

17   standing on the "inextricably intertwined" injury *exception* to *AGC*'s market

18   participation requirement.  Opp. at 25-26.  However, as set forth in *McCready*, the

19   "inextricably intertwined" injury exception is a "*narrow* exception to the market

20   participant requirement" that is inapplicable when a plaintiff is neither the direct victim

21   of the alleged conspiracy nor the actual means for carrying out the alleged conspiracy.

22   *Am. Ad. Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1057 n.5 (9th Cir. 1999)

23   (citations omitted) (emphasis added); *Blue Shield of Virginia v. McCready,* 457 U.S. at

24   465, 484 (1982).  In *McCready*, a health insurer allegedly conspired with psychiatrists

25   to deny reimbursement to plaintiff-insured for monies she herself had directly paid to a

26   psychologist.  Although psychologists were the target of the conspiracy, the Supreme

27   Court held that because "[d]enying reimbursements [to insureds] … was the very means

28   by which it is alleged that Blue Shield sought to achieve its illegal ends" (*id*. at 479),

1    and because the psychologist had already been paid by the plaintiff and suffered no
2    direct injury, the injury the insured suffered was inextricably intertwined with the injury
3    the conspirators sought to inflict on psychologists and the psychotherapy market. *Id.* at
4    484.

5        *McCready* has nothing to do with this case.  Counterclaimants affirmatively
6    allege that the *studios* paid the supposed price-fixed packaging fees.  Neither the Guilds
7    nor the Individual Counterclaimants would be direct victims of the alleged price-fixing
8    (the studios would be); nor can the Guilds or Individual Counterclaimants plausibly be
9    the means for carrying out the alleged conspiracy when they were not parties to, and
10   did not negotiate or impose, the supposedly price-fixed packaging fees.

11       Finally, Counterclaimants have concocted a new theory that the Agencies'
12   support for a supposed "packaging model" caused reduced quality of representation
13   services.  Opp. at 26.  This "quality of representation" injury is not pled in the A&C.
14   Opp. at 26 (citing paragraphs alleging that "audiovisual entertainment" quality—not
15   *agency representation* services—has been harmed (A&C ¶¶ 305-306)).  To be sure,
16   Counterclaimants claim that packaging has resulted in conflicted representation—but
17   this has nothing to do with whether or not the studios' packaging fees were price-fixed.
18   A&C ¶¶ 307-308, 503 (e.g., alleging fiduciary duty breach independent of any price-
19   fixing claim).  Beyond all that, *the Guilds* do not hire talent agents, so they lack antitrust
20   standing to sue over any claimed reduction in the quality of agency services.

21       **2.    Counterclaimants Lack Antitrust Standing to Sue Over an**
22       **Alleged Group Boycott That Is Not Causally Connected to**
         **Their Claimed Injuries**

23       The Guilds do not dispute that, if the Agencies' alleged joint-refusal-to-negotiate
24   caused a reduction in "competition among individual agencies," it still would not confer
25   antitrust standing on the *Guilds* because *they* do not hire talent agents and thus are not
26   "consumer[s] of the alleged violator's goods or services." *Eagle*, 812 F.2d at 540.  This
27   dispositive point (Mot. at 9) is unrebutted and, for that reason alone, the joint-refusal-
28   to-negotiate claim must be dismissed as to the Guilds.

4

COUNTERCLAIM-DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS COUNTERCLAIMANTS' CONSOLIDATED
COUNTERCLAIMS – CASE NO. 2:19-CV-05465-AB-AFM (FFMx)

Nor does any Counterclaimant meaningfully respond to the Agencies' showing that Counterclaimants have not plausibly alleged that, *but for* the alleged group boycott, the Agencies would have each engaged in individual negotiations with the Guilds *and* reached new franchise agreements banning packaging and content affiliates.  Mot. 10.  Counterclaimants' only rejoinder is to mischaracterize the Agencies' showing as mere "opinion"—when, in reality, it is based on *Counterclaimants' own allegations* that before the Guilds cut off group negotiations, "the Agencies summarily rejected the Code of Conduct" because it was "unacceptable to *all* agencies" who were "firmly opposed to the WGA's Code."  A&C ¶ 382 (emphasis added).  Counterclaimants may not make such allegations and simultaneously advance the inconsistent contention that a group boycott—rather than "firm[] oppos[ition] to the WGA's Code"—is why WME, CAA, and UTA each independently declined to agree to the Code of Conduct.  Counterclaimants similarly have no answer to the fact that *they* fired the Agencies— *e.g.*, A&C ¶¶ 130, 210, 381, 390-91—such that any reduction in available agents to represent Counterclaimants was self-inflicted.  Mot. 9-10.[5]

Further, Counterclaimants do not address the Agencies' demonstration that no jury or court could reasonably calculate—much less apportion—purported damages based upon the group refusal-to-negotiate claim.  Mot. 10-11 (citing *AGC*, 459 U.S. at 545).  Even *if* Counterclaimants had plausibly alleged that some number of talent agencies would have signed new franchise agreements absent the purported boycott, they offer no explanation as to how any fact-finder could determine essential injury questions such as: which agencies would have signed? on what terms? which, if any, Individual Counterclaimants would have retained such an agent? and how— quantifiably—would such a Counterclaimant have been better off in a "but for" world with more franchised agents?  Counterclaimants supply no answers because their

---

[5] Counterclaimants' reliance on *St. Paul* (Opp. 27) misses the point.  The Agencies do not contend that a group refusal to negotiate may never give rise to antitrust injury.  Rather, the Agencies contend that the specific boycott alleged *here* does not confer antitrust standing on Counterclaimants.

1  boycott claim rests on imponderable injury speculation that precludes antitrust standing.

2  Finally, the *Guilds* have no antitrust standing to claim injury based on fewer

3  available agents because the *Guilds* do not hire agents.  Nor may the Guilds sue for

4  treble damages on behalf of members who themselves lack antitrust standing and whose

5  individual participation in the suit would be required (Mot. 21-22; *infra*, § II.D.1).[6]

6  ## B.   Counterclaimants Do Not Plead an Anticompetitive Agreement

7  Counterclaimants allege two discrete antitrust claims: one is an alleged *price-*

8  *fixing* conspiracy supposedly birthed *in the 1990s*; the other is an alleged *group boycott*

9  conspiracy supposedly formed *after June 19, 2019*.  A&C ¶¶ 350, 390-91.

10  Notwithstanding the Opposition's attempt to conflate the claims, the actual averments

11  underlying one claim do not support the other and neither sufficiently alleges an

12  actionable antitrust conspiracy.

13  ### 1.   *Lenhoff* Bars Counterclaimants' Price-Fixing Claim

14  Counterclaimants try to save their price-fixing claim by arguing that the Ninth

15  Circuit's decision in *Lenhoff v. United Talent Agency, Inc.*, 729 F. App'x 528 (9th Cir.

16  2018)[7] involved a different claim and a different set of facts.  Not true.  *Lenhoff*

17  dismissed the exact same price-fixing claim Counterclaimants assert here: that the

18  Agencies "conspired to fix a '3-3-10 packaging fee.'"  729 F. App'x at 530.

19  Counterclaimants attempt to argue otherwise by misleadingly citing to the district

20  court's order dismissing Lenhoff's *First* Amended Complaint, 2015 WL 7008185, but

21  it was the dismissal of Lenhoff's *Third* Amended Complaint ("TAC") that was

22  ultimately affirmed by the Ninth Circuit.  *Lenhoff*, 729 F. App'x at 529.  And by the

23  time *Lenhoff* reached the Ninth Circuit, the case involved a virtually identical set of

---

24  [6] Counterclaimants' lack of antitrust standing also dooms their duplicative Cartwright
25  Act claims.  *Lenhoff*, 729 F. App'x at 531.  Counterclaimants' reliance on *Knevelbaard*
   is misplaced.  In *Knevelbaard*, "the complaint's allegations unmistakably place[d] all
26  parties" in the same market.  *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979,
   989 (9th Cir. 2000).

27  [7] Unpublished Ninth Circuit dispositions "have persuasive value and indicate how the
   Ninth Circuit applies binding authority."  *United States v. Dorsey*, 2015 WL 847395, at
28  *3 n.4 (C.D. Cal. Feb. 23, 2015).

1  allegations as those asserted here.  Lenhoff alleged that named representatives of WME

2  and CAA (but not UTA) agreed to fix a "3-3-10" packaging fee in the 1990s.  *See*

3  *Lenhoff*, No. 16-55739, Appellant's Opening Brief (Dkt. No. 19) at 14-16; Appellant's

4  Reply Brief (Dkt. No. 43), at 25.[8]  Lenhoff likewise cited to the same *Hollywood*

5  *Reporter* article as "evidence" of the purported conspiracy that Counterclaimants allege.

6  Lenhoff Open. Br. at 22-24; Reply Br. at 9 n.6; *see also* A&C ¶¶ 8, 317; *Lenhoff*, TAC,

7  Case No. 2:15-cv-01086, Dkt. No. 49, at ¶ 77.   Similarly, Lenhoff alleged that the

8  Agencies perpetuated the conspiracy through ATA committee meetings.   Lenhoff

9  Opening Br. at 17-18; Reply Br. at 13-14.  Indeed, the allegations of the A&C appear

10  to be lifted directly from Lenhoff's TAC and a motion for reconsideration denied by the

11  district court; for example, A&C ¶ 350 repeats virtually verbatim the allegations from

12  Lenhoff's failed motion for reconsideration.  *See Lenhoff*, No. 2:15-cv-01086, Dkt. No.

13  66 at 3-4 (order denying at Dkt. No. 72).[9]  The Ninth Circuit held that these allegations,

14  the same as those here, amounted to "a bare, conclusory allegation of parallel conduct

15  and so does not adequately state a [Sherman Act] § 1 claim."  *Lenhoff*, 529 F. App'x at

16  530.[10]   Counterclaimants' allegation that the Agencies coordinated information on

17  packaging through the ATA is similarly insufficient, because "mere participation in

18  trade-organization meetings where information is exchanged and strategies are

19  advocated does not suggest an illegal agreement."  *In re Musical Instruments*, 798 F.3d

20  1186, 1196 (9th Cir. 2015); *Lenhoff*, 529 F. App'x at 530.  Counterclaimants' allegation

21  of conspiracy is also undermined by their admission that it is consistent with the

22
23  [8] As set forth in the concurrently-filed Request for Judicial Notice, the Court may take judicial notice of the excerpts of Lenhoff's Ninth Circuit Opening Brief and Reply Brief, submitted as Exhibits 1 and 2 to the Declaration of Jeffrey L. Kessler.

24
25  [9] While the denial of Lenhoff's motion for reconsideration was not before the Ninth Circuit, the allegations therein were presented in Lenhoff's briefing as a basis for granting leave to amend, *see* Lenhoff Open. Br. at 14-16, 48-49, Reply Br. at 24-25,
26  and the Ninth Circuit held that further amendment would be "futile."  *Lenhoff*, 529 F. App'x at 532.

27  [10] Counterclaimants' efforts to distinguish their allegations from Lenhoff's are belied by the fact that they recently *disclosed Charles Lenhoff as a percipient witness* on the
28  very subject of alleged agency price-fixing of package fees.

7

COUNTERCLAIM-DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS COUNTERCLAIMANTS' CONSOLIDATED
COUNTERCLAIMS – CASE NO. 2:19-CV-05465-AB-AFM (FFMx)

1   rational, independent economic interest of each Agency to engage in packaging.  A&C

2   ¶ 283.  In sum, Counterclaimants allege nothing more than parallel conduct (similar

3   package terms) that is "insufficient to state a claim."  *In re Musical Instruments*, 798

4   F.3d at 1193 (adoption of similar pricing policies by guitar sellers insufficient to state a

5   claim without "plus factors"); *Hanson v. Shell Oil Co.*, 541 F.2d 1352, 1359 (9th Cir.

6   1976) (similarity of prices alone not sufficient to state a claim).[11]

7                  **2.     The Group Boycott Conspiracy Is Not Plausibly Pled**

8        Counterclaimants' group boycott claim is similarly conclusory and devoid of

9   supporting factual averments.  *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1048 (9th

10   Cir. 2008).  Indeed, Counterclaimants' own allegations render their group boycott

11   theory implausible.  According to Counterclaimants, after June 19, 2019, they "revoked

12   their consent to collective negotiations through the ATA," and the Agencies thereafter

13   agreed to boycott individual negotiations with the WGA.  A&C ¶¶ 390-91.  This claim,

14   however, is contradicted by the more specific Counterclaim allegations of separate,

15   individual communications from UTA and WME (but not CAA) inviting further

16   proposals and merely expressing the *individual* preference of each Agency to continue

17   negotiating through ATA.  A&C ¶ 394.

18        The allegation that UTA and WME *individually* stated they preferred to deal with

19   the Guilds through the ATA—as they had done for 43 years through the AMBA—is

20   insufficient to create a plausible inference of a conspiracy.  Such an individual

21   preference to ensure that each Agency would be subject to equal terms under a new

22   franchise agreement, "just as easily suggest[s] rational, legal business behavior by the

23   defendants as [it] could suggest an illegal conspiracy" and thus is "insufficient to plead

24   a violation of the antitrust laws."  *Kendall*, 518 F.3d at 1049.[12]  Counterclaimants fail

25

26   [11] *JTC Petroleum Co. v. Piasa Motor Fuels, Inc.*, 190 F.3d 775, 777 (7th Cir. 1999), dealt with a closed "local-government contracting market" and is not analogous.

27   [12] Counterclaimants' citation to *In re: Electronic Books Antitrust Litigation*, 859 F.
28   Supp. 2d 671 (S.D.N.Y. 2012) is inapposite.  There, all the alleged co-conspirators had signed contracts that contained the challenged pricing guarantees.  *Id.* at 675.

8

COUNTERCLAIM-DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS COUNTERCLAIMANTS' CONSOLIDATED
COUNTERCLAIMS – CASE NO. 2:19-CV-05465-AB-AFM (FFMx)

to plead any direct evidence of a group boycott (on the contrary, they allege that some talent agencies *are* individually negotiating and reaching new franchise agreements (A&C ¶¶ 151, 385)), and they also fail to allege any "plus factors" showing that an individual Agency's preference to negotiate through the ATA is inconsistent with its independent economic interests, thus making unilateral conduct equally plausible and requiring dismissal.  *In re Musical Instruments*, 798 F.3d at 1194.[13]

## C. The RICO Claims Should Be Dismissed

### 1. Counterclaimants Lack RICO Standing

Counterclaimants do not dispute that, as with their antitrust claims, they must again satisfy the "demanding" *AGC* standing test to state RICO claims.  *Holmes v. Sec. Investor Protection Corp.*, 503 U.S. 258, 267-68 (1992).  The RICO claims asserted— predicated on the Agencies accepting packaging fees—thus fail for the same reason as the Agencies' price-fixing claims: Counterclaimants do not suffer injury in the market for package fees that they do not pay or receive.  *Supra*, § II.A.1.

Although the Court need not proceed further, Counterclaimants' argument that "proximate cause is relevant only to RICO claims for retrospective damages, not to claims for equitable relief" (Opp. at 17) is a remarkable bit of misdirection, considering they *do* seek trebled RICO damages.  A&C ¶ 544.  Proximate cause is therefore required but cannot be established here.  *Holmes*, 503 U.S. at 267-68.  Specifically, Individual Counterclaimants fail to satisfy proximate cause for their claimed RICO damages because they have not alleged concrete facts showing any "direct relation between the injury asserted and the injurious conduct alleged."  Mot. 15-16 (citing *Canyon Cty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 981 (9th Cir. 2008)).  The Guilds' damages claims for, e.g., lost dues, fare no better, as such remote and derivative injury claims by a union are expressly precluded by *AGC* and *Eagle*.  *Supra*, § II.A.1.

Further, no Counterclaimant has standing to seek a RICO injunction for two

---

[13] Counterclaimants' failure to plead an agreement also defeats their Cartwright Act claims.  *See Name Space, Inc. v. ICAAN*, 795 F.3d 1124, 1131 & n.5 (9th Cir. 2015).

additional reasons.  First, in the Ninth Circuit, "injunctive relief is not available to a private party in a civil RICO action."  *Brignac v. Yelp Inc.*, No. 19-CV-01188-EMC, 2019 WL 2372251, at *7 (N.D. Cal. June 5, 2019) (quoting *Religious Tech. Ctr. v. Wollersheim*, 796 F.2d 1076, 1084 (9th Cir. 1986)).  Second, even if injunctive relief were available, having terminated their relationships with the Agencies, Counterclaimants are not, as a matter of law, "realistically threatened by a repetition of the [alleged] violation" from Agency packaging to support a request for injunctive relief.  *Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir. 2006).

In addition, Counterclaimants' allegations of injury are too attenuated to confer RICO standing (Mot. 16), and *Diaz v. Gates*, 420 F.3d 897, 900-901 (9th Cir. 2005) is not to the contrary.  In *Diaz*, the plaintiff alleged a definitive financial loss by asserting that he "could not fulfill his employment contract or pursue valuable employment opportunities because he was in jail."  *Id*. at 900.  Here, the Guilds have no cognizable harm from packaging fees and Individual Counterclaimants do not aver a single, concrete lost writing opportunity as a result of any package.  "Without a harm to a specific business or property interest … there is no injury to business or property within the meaning of RICO."  *Id*.

## 2.    Packaging Does Not Constitute a RICO Predicate Act Because It Does Not Violate the LMRA

The RICO claims also fail because the requisite "predicate act" depends on a stunningly incorrect interpretation of the LMRA.  For the RICO claims to survive the pleading stage, the Court must accept Counterclaimants' assertion that every packaging payment, by every studio, to every talent agency representing a unionized writer, for the last 43 years, was a criminal bribe to a union representative in violation of federal labor law.  Counterclaimants are thus forced implausibly to label every Hollywood motion picture studio the "co-perpetrator" of a massive racketeering scheme that took place in full public view—with no intervention by law enforcement—for more than four decades.  Opp. at 18.  Under this fanciful theory, Counterclaimants themselves would

10

COUNTERCLAIM-DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS COUNTERCLAIMANTS' CONSOLIDATED COUNTERCLAIMS – CASE NO. 2:19-CV-05465-AB-AFM (FFMx)

be part of the criminal conspiracy, because the Guilds (on behalf of their members) approved agencies accepting packaging fees for 43 years under the AMBA. Most extraordinarily, while Counterclaimants maintain that such a practice constitutes a criminal act, the Guilds simultaneously *continue to condone agency packaging fees* through the "Phase-In of Packaging Fee Prohibition" in the Code of Conduct that permits such fees until at least 2021. A&C ¶¶ 123-125. Counterclaimants' outlandish theory cannot possibly—let alone plausibly—state a predicate act for a RICO claim.

Indeed, the LMRA case law confirms that Section 302 is directed at union collective bargaining conduct and thus does not permit an interpretation in which talent agencies are union "representatives" criminally prohibited from receiving payment from an employer within the meaning of Section 302, 29 U.S.C. § 186(a)(1). Despite Counterclaimants' claim to the contrary,[14] the Supreme Court has held that Section 302 must be construed "strictly" and only to effectuate the "obvious intention" of Congress. *Arroyo v. United States*, 359 U.S. 419, 424 (1959). That "obvious intention" is stated in *Arroyo*: "[w]hen Congress enacted s 302 its purpose was ... to deal with problems peculiar to *collective bargaining*." *Id.* at 424-25 (emphasis added); *Oregon Teamsters Emp. Trust v. Hillsboro Garbage Disposal, Inc.*, 800 F.3d 1151, 1157 (9th Cir. 2015) (Section 302 "target[s] practices harmful to the collective bargaining process.").[15]

Unable to escape the controlling authority that the purpose of Section 302 is to protect the integrity of union collective bargaining, Counterclaimants now argue that talent agencies are somehow involved in such bargaining. Opp. at 13. But this

---

[14] Counterclaimants cite to *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 79 (1998) and *Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1010 (1990) to argue for a broad construction of Section 302. But *Oncale* does not involve a criminal statute. And, in *Barthelemy*, although the Ninth Circuit held that the payment by an employer *on behalf of a union* (nothing like what is at issue here) appeared to "flatly" violate the "explicit language" of the federal Railway Labor Act ("RLA"), it nonetheless sought more information from the parties because the payment was not within the conduct Congress meant to prohibit in the RLA. 897 F.2d. at 1010.

[15] As the Supreme Court instructed only weeks ago, federal statutes like LMRA 302 must be construed with their purposes and context firmly in mind. *Peter v. Nantkwest, Inc.*, No. 18-801, 2019 WL 6719083 at *4-5 (U.S. Dec. 11, 2019).

11

COUNTERCLAIM-DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS COUNTERCLAIMANTS' CONSOLIDATED COUNTERCLAIMS – CASE NO. 2:19-CV-05465-AB-AFM (FFMx)

argument has no basis in the pleadings or in labor law. As the A&C makes clear, the Agencies represent individual writers, in individual negotiations with studios, for individualized contract terms—all at or above the "minimum terms" collectively bargained by the Guilds with the studios and set forth in the MBA. A&C ¶¶ 269-270. Unlike the Guilds, the Agencies have no role in collective bargaining and no authority to bind writers other than their own clients: The Guilds "*only* shall have the right to waive any of the provisions of this [MBA] on behalf of or with respect to any individual writer." A&C ¶ 270 (emphasis added). Indeed, under labor law, the Guilds are the "*exclusive collective bargaining* representative" of their members. *Id.* ¶ 265 (emphasis added). Talent agencies have no collective bargaining authority at all. A packaging payment to a talent agency thus cannot be construed as an employer bribe to a union representative to undermine the collective bargaining process, and therefore does not violate Section 302. *BASF Wyandotte Corp. v. Local 227*, 791 F.2d 1046, 1050 (2d Cir. 1986) (the "sole purpose" of Section 302 is to ensure the integrity of union welfare funds and to prohibit payments to union representatives that "degenerate into bribes") (quoting 93 Cong. Rec. 4805 (1947)).

Moreover, the rule of lenity "requires courts to limit the reach of criminal statutes to the clear import of their text and construe any ambiguity against [criminal liability]." *United States v. Millis*, 621 F.3d 914, 916-17 (9th Cir. 2010) (quotation marks omitted). Applying this strict construction to Section 302's use of the term "representative" further cements the conclusion that Counterclaimants' interpretation fails. The Agencies are neither natural-person "individuals" nor "labor organizations" and thus cannot be Section 302 "representatives," as Counterclaimants' own case explains. *Rest. Law Ctr. v. City of New York*, 360 F. Supp. 3d 192, 235 (S.D.N.Y. 2019); *see* 29 U.S.C. §§ 142(3), 152(4). And, equally important, to the extent the term "representative" in Section 302 is ambiguous, it must be construed in the broader statutory context. A "representative" of "employees," as those words are used in the LMRA and NLRA,

12

COUNTERCLAIM-DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS COUNTERCLAIMANTS' CONSOLIDATED
COUNTERCLAIMS – CASE NO. 2:19-CV-05465-AB-AFM (FFMx)

1    means a representative for purposes of *collective bargaining*.[16]

2       Counterclaimants' two principal cases establish this very point.  In *United States*

3    *v. Ryan*, 350 U.S. 299, 300 (1956), the Supreme Court determined that a union president

4    who received payments from employers during the years that he *negotiated and signed*

5    *the collective bargaining agreement*, was a collective bargaining representative subject

6    to the prohibitions of Section 302.  *Id.* at 301-03.  In *Korholz v. United States*, 269 F.2d

7    897, 901-902 (10th Cir. 1959), the Tenth Circuit held that an employer's payment to a

8    union organizer violated the statute because the organizer was "*a representative of labor*

9    in [the employer's] plant." *Id.* (emphasis added).  Here, by contrast, the Agencies

10   neither engage in collective bargaining nor represent the union in any collective

11   bargaining activities, and Counterclaimants do not allege otherwise.   Instead, the

12   Agencies engage in the commercial practice of packaging, which in no sense violates

13   the union anti-kickback prohibitions of Section 302.  Mot. 6-7.  Indeed, no Section 302

14   case in the more-than-70 years the statute has existed has involved a payment to

15   anything like a talent agency, and courts have rejected attempts to expand the statutory

16   prohibition to cover conduct outside of the collective bargaining context.[17]  Because the

17   claimed violation of Section 302 is the only predicate act underlying the RICO

18   counterclaims, each of these claims fails as a matter of law.

19     **D.** **Counterclaimants' State Law Claims Are Each Legally Defective**

20       **1.** **The Guilds Lack Associational Standing to Assert Their**
           **Breach of Fiduciary Duty and Constructive Fraud Claims**

21

22   [16] The NLRA and the LMRA have used the term "representative" in this sense since
23   enactment.  *E.g.,* NLRA, 49 Stat. 449, 29 U.S.C. § 157 (1935) (establishing right of
     employees "to bargain *collectively* through *representatives* of their own choosing"
24   [emphasis added]); LMRA, 29 U.S.C. § 158(a)(5) (making it illegal for an employer
     "to refuse to bargain *collectively* with the *representatives* of his employees"); *id.* §
25   158(d) ("to bargain *collectively* is the performance of the mutual obligation of the
     employer and the *representative* of the employees to meet at reasonable times and
26   confer in good faith with respect to wages…." [emphasis added]).

27   [17] The Ninth Circuit indicated that members of an apprenticeship committee were not
     "representatives" of "employees" for purposes of Section 302, since they are not union
28   representatives in the context of collective bargaining.  *Oregon Columbia Brick Masons*
     *v. Gardner*, 448 F.3d 1082, 1088-89 (9th Cir. 2006); *see also Arroyo*, 359 U.S. at 425.

1   The Agencies have shown that the Guilds lack associational standing to assert

2   fiduciary-breach and constructive fraud claims on behalf of their more than 14,700

3   writers, each of whose separate contract negotiation, conducted by different agents, was

4   necessarily affected by packaging in different ways.  Mot. 21-22.  The Guilds offer two

5   arguments in response: (1) they are entitled to bring associational claims because they

6   seek only equitable relief, and (2) their claims concern only "systemic" violations that

7   may be "established with sample testimony."  Opp. 4.  Both arguments fail.

8   First, the Guilds' contention that they seek only equitable relief is at odds with

9   their claims for extensive monetary relief.  In alleging breach of fiduciary duty and

10   constructive fraud on behalf of their members, the Guilds seek "lost wages, lost

11   employment opportunities, and other economic losses" (A&C ¶¶ 506, 513), and they

12   also seek "disgorge[ment]" and an "accounting" of "all" agency profits.  *Id.* ¶¶ 15, 17.

13   Second, even if the Guilds were now abandoning monetary relief and seeking

14   injunctive relief only, that approach would still fail because there *are no ongoing*

15   *fiduciary relationships*.  As the Guilds plead (A&C ¶¶ 381, 24), they directed the writers

16   they represent to terminate their relationships with the Agencies.  Thus, by the Guilds'

17   own allegations, the Agencies no longer have a prospective fiduciary, confidential, or

18   agency relationship with Guild-represented writers.  An injunction or declaration (A&C

19   ¶¶ 584-85, 503-505, 510-13) against the Agencies to perform "fiduciary" duties in the

20   future (or to avoid "constructive" fraud) is not available in a case in which there is no

21   continuing fiduciary relationship.  *Hangarter v. Provident Life & Acc. Ins. Co.*, 373

22   F.3d 998, 1021-22 (9th Cir. 2004) (when a party "currently has no contractual

23   relationship with Defendants and therefore is not personally threatened by their

24   conduct," injunction could not issue).[18]

25   ───────────────

[18] *See also City of Los Angeles v. Lyons,* 461 U.S. 95, 111 (2003) (prospective injunctive

26   relief "is unavailable absent a showing of irreparable injury, a requirement that cannot
be met where there is no showing of any real or immediate threat that the plaintiff will

27   be wronged again ....."); *Gordon v. Aerotek, Inc.*, 2017 WL 8217410, at *6-7 (C.D. Cal.
Oct. 12, 2017) (no standing for prospective declaratory or injunctive relief against

28   former employer where former employee "cannot demonstrate a real or immediate
threat of irreparable injury"); *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1044 (9th

14

COUNTERCLAIM-DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS COUNTERCLAIMANTS' CONSOLIDATED
COUNTERCLAIMS – CASE NO. 2:19-CV-05465-AB-AFM (FFMx)

The Guilds not only lack associational standing, they also lack Article III standing to pursue injunctive and declaratory relief because they cannot show that it is substantially likely, and not merely speculative, that the relief sought will redress or prevent the alleged injury. *San Diego Cty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996); *Ry. Labor Executives Ass'n v. Dole*, 760 F.2d 1021, 1023 (9th Cir. 1985). Here, there is no non-speculative possibility of the Agencies committing fiduciary breaches to Guild members by packaging, because the Guilds' members have fired the Agencies who engage in packaging.

In addition, seeking injunctive relief does not obviate the need for individual participation of Guild members. For an association to have standing, "neither *the claim asserted* nor the relief requested [must require] the participation of individual members[.]" *Hunt v. Wash. Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977) (emphasis added). "[P]lenty of injunction cases have been dismissed because of the need for individualized proof." *Pharmaceutical Care Management Ass'n v. Rowe*, 429 F.3d 294, 314 (1st Cir. 2005). The underlying question of "[w]hether the defendant breached [his fiduciary] duty towards the plaintiff is a question of fact," *Marzec v. Pub. Empls.' Ret. Sys.*, 236 Cal. App. 4th 889, 915 (2015), and whether conduct "constitutes constructive … fraud[] … depends on the … circumstances of *each case*" too. *Prakashpalan v. Engstrom, Lipscomb & Lack*, 223 Cal. App. 4th 1105, 1131 (2014) (emphasis added); *see also, e.g.*, *United Farmers Agents Ass'n, Inc. v. Farmers Grp., Inc.*, 32 Cal. App. 5th 478, 491-92 (2019) (no associational standing to pursue declaratory relief when determination was "highly dependent on context").

Moreover, bald allegations of a "systemic" violation are not enough to satisfy the burden of pleading associational standing. *Pharmaceutical Care*, a case the Guilds cite, shows why.[19] 429 F.3d at 314. There, a trade association sought injunctive relief on

_____

Cir. 1999) (no availability of declaratory relief where plaintiff could not meet "imminent harm" requirement).

[19] The authorities the Guilds cite are distinguishable. *Pa. Psych. Soc'y v. Green Spring Health Servs.*, 280 F.3d 278, 286 (3d. Cir. 2002) concerned the methods that medical

15

COUNTERCLAIM-DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS COUNTERCLAIMANTS' CONSOLIDATED COUNTERCLAIMS – CASE NO. 2:19-CV-05465-AB-AFM (FFMX)

behalf of its members, and the First Circuit found that the "district court acted reasonably in concluding that in this case the association should not be allowed to sue … and that individual members should bring their own cases." *Id.*  The court noted that "claims could in principle be significantly strengthened or weakened by the particularized circumstances of each individual member . . . [and] there appears to be considerable variation in each member company's particular circumstances." *Id.*

Here, demonstrating that the Agencies breached fiduciary duties and committed "constructive" fraud as to thousands of writers in thousands of separately negotiated transactions *necessarily* would require careful examination of the disclosures to, and the harm suffered by, the individual writers in individual transactions.  Whatever the form of relief sought, the Agencies are entitled to offer evidence that they did not breach—systemically or otherwise—their fiduciary duties to writers in individual transactions supposedly affected by specific packaging deals.  *Desert Outdoor Advert. v. Superior Court*, 196 Cal. App. 4th 866, 873 (2011) ("[t]he scope of a fiduciary's obligations depends on specific facts of the case"); CACI No. 4102 (2019 ed.) (proving fiduciary breach requires proving absence of individualized consent to a specific transaction); *Mosier v. S. Cal. Phys. Ins. Exch.*, 63 Cal. App. 4th 1022, 1048 (1998) (breach-of-fiduciary-duty plaintiff must show the alleged harm was caused by the specific conduct that constitutes the breach).  Constructive fraud requires these individualized elements *plus* "actual reliance."  *Prakashpalan*, 223 Cal. App. 4th at 1131.  The Agencies are entitled to defend themselves by presenting transaction-specific evidence to rebut assertions of non-disclosure, lack of consent, and harm, and

---

care organizations employed for making authorization decisions, which did not vary by individual members. *See also N.J. Protection & Advocacy, Inc. v. N.J. Dep't of Educ.*, 563 F. Supp. 2d 474, 483 (D.N.J. 2003) (claim brought under Individuals with Disabilities Education Act did not require "a fact-intensive inquiry into [group's] individual members").  In *Mkt. Lofts Cmty. Ass'n v. 9th St. Mkt. Lofts, LLC*, 222 Cal. App. 4th 924, 932-934 (2014), the court permitted an association to bring a representative UCL action to address a breach of a license agreement between the defendant developer and the plaintiff homeowner's association because injuries to the homeowners were *identical* (they were forced to pay monthly parking charges that the developer had promised *the association* they would not owe).

16

COUNTERCLAIM-DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS COUNTERCLAIMANTS' CONSOLIDATED COUNTERCLAIMS – CASE NO. 2:19-CV-05465-AB-AFM (FFMx)

1   to present individual defenses such as laches, statute of limitations, estoppel, and

2   waiver.  No method of "sampling" can overcome these obstacles to associational

3   standing.

4         **2.   Individual Counterclaimants' State Law Claims Similarly Fail
            on Numerous Grounds**

5

6         ***Individual Counterclaimants allege no facts of a breach of fiduciary duty or***

7   ***constructive fraud.***  The contention that their state law claims "do not require more

8   'individualized' allegations" (Opp. 8) is, as shown above, wrong as a matter of law.

9   Fiduciary duty and constructive fraud claims "depend[] on the facts and circumstances

10  of each case."  *Prakashpalan*, 223 Cal. App. 4th at 1131.  Conclusory assertions of

11  "inherent conflicts of interest" or failures to disclose more than generalized "harms"

12  (A&C ¶¶ 307-08) are inadequate in any fiduciary duty or constructive fraud case, but

13  especially so here, where the Guilds *consented* to packaging for over 40 years, and

14  Counterclaimants admit there are *benefits* to packaging.  *Id.* at ¶¶ 55, 62.

15        ***Individual Counterclaimants do not sufficiently plead causation to support***

16  ***their state law claims.***  They are wrong in contending that the mere "alleg[ation] that

17  they were harmed, [] is all that is required" to plead causation.  Opp. 8.  *Prakashpalan*

18  holds otherwise: Counterclaimants must plead facts to show *how* the alleged breaches

19  of fiduciary duty and constructive fraud *actually harmed* them by "affect[ing] the

20  outcome."  *Id.* at 1132; *see also id.* at 1128-29.  *Prakashpalan* affirmed demurrer

21  "because [in that case, plaintiffs] allege[d] no causation, a required element."  *Id.* at

22  1128.[20]  Counterclaimants have no answer to *Prakashpalan*.[21]

23  _____

24  [20] Counterclaimants rely on *Knutson v. Foster*, 25 Cal. App. 5th 1075 (2018), *review
    denied* (Nov. 20, 2018), but that case did *not* hold that the element of causation of harm

25  "is satisfied by the conflict itself."  To the contrary, causation was *satisfied* in *Knutson*
    because the plaintiff signed an objectively harmful contract containing "unattainable"
    requirements that clearly caused her economic and noneconomic harm.  *Id.* at 1093.

26  Counterclaimants also misrepresent the "substantial factor" test.  "[C]onduct is not a
    substantial factor in causing harm if the same harm would have occurred without that

27  conduct."  *Yanez v. Plummer*, 221 Cal. App. 4th 180, 187 (2013).

28  [21] Hall's unique claims for breach of oral contract and promissory estoppel suffer from
    further defects.  Hall's "performance"—remaining with UTA—does not satisfy the

17

COUNTERCLAIM-DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS COUNTERCLAIMANTS' CONSOLIDATED
COUNTERCLAIMS – CASE NO. 2:19-CV-05465-AB-AFM (FFMx)

***Counterclaimants did not plead constructive fraud in compliance with Rule 9(b).***  Counterclaimants incorrectly argue that they were not required to do so because "fraud is not an essential element of the claim."  Opp. 9 (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1104-05 (9th Cir. 2003)).  *Vess* holds that constructive fraud must be alleged with particularity if (1) a plaintiff relies on a "unified course of fraudulent conduct" as the basis of a claim or (2) a plaintiff makes allegations of fraudulent conduct in support of a claim.  *Id.* at 1103-1105.[22]  Here, Counterclaimants do both.  First, they allege "systemic" constructive fraud by not disclosing purported conflicts of interest.  Second, they aver that the Agencies intentionally failed to disclose "the material details of their packaging fee agreements"—i.e., a fraud.  Opp. 9.  Yet, Individual Counterclaimants do not allege, as required, "'the who, what, when, where, and how' of the misconduct charged."  *Vess*, 317 F.3d at 1106.

### 3.   All of the Counterclaimants Fail to State the Required Elements of a UCL Cause of Action

#### (a)   The Guilds Cannot Obtain a UCL Injunction

The Guilds allege continuing harm under the UCL in the form of (speculative) monitoring costs regarding packaging.  A&C ¶¶ 527-28, 586; Opp. 5-6.  But, because the Guilds' members are no longer Agency clients, *prospective* relief is not available— there is no need to monitor Agencies who no longer represent Guild members.  *Hangarter*, 373 F.3d at 1021-22 (no standing to seek UCL injunctive relief in the

---

statute of frauds because there is no basis to infer the existence of a purported oral agreement from someone doing nothing.  *Cf. Levi v. Murrell*, 63 F.2d 670, 672 (9th Cir. 1933) ("nonaction" "by its very nature indicates nothing whatever, much less a[n] [] agreement.").  UTA's payment of "partial refunds" is similarly insufficient because the "partial performance" exception to the statute of frauds traditionally applies only to real property contracts, Witkin, Summary 11th Contracts § 403, and refers to "partial performance" by the plaintiff who seeks to enforce the oral contract, not by the defendant.  *See Secrest v. Security Nat'l Mortgage Loan Trust 2002-2*, 167 Cal. App. 4th 544, 555-56 (2008).  Hall also fails plausibly to allege *detrimental* reliance and admits that most if not all of her oral contract claim is time-barred.  Opp. 11.

[22] Counterclaimants further ignore the legion of post-*Vess* cases requiring constructive fraud to be pleaded under Rule 9(b).  *E.g., Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 668 & n.17 (9th Cir. 2019); *EduMoz, LLC v. Republic of Mozambique*, 2014 WL 12802921, at *30 (C.D. Cal. Jul. 21, 2014) (collecting cases).

---

18

COUNTERCLAIM-DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS COUNTERCLAIMANTS' CONSOLIDATED COUNTERCLAIMS – CASE NO. 2:19-CV-05465-AB-AFM (FFMx)

1   absence of ongoing relationship).  Beyond an injunction, the Guilds seek no available

2   remedy under the UCL, meaning their UCL claim fails entirely.[23]

3           **(b)    Counterclaimants Have Not Pled a Violation of the**
                     **"Unlawful" Prong**

4

5           Counterclaimants' primary "unlawful" argument rests on the LMRA Section 302

6   theory.  Opp. 11-13.  That theory is legally meritless (*supra*, § II.C.2), and thus the UCL

7   claim fails too.  *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1554

8   (2007).  The UCL claim is also preempted (Mot. 28) because the LMRA's regulation

9   of employer payments is the very type of "pervasive federal regulation" that displaces

10  state-law remedies.  *United Auto., Aerospace & Agric. Implement Workers v. Hardin*

11  *Cty., Kentucky*, 842 F.3d 407, 418 (6th Cir. 2016).[24]

12          Additionally, under the UCL's unlawful prong, Counterclaimants invoke their

13  breach of fiduciary duty/constructive fraud claims as the predicate "unlawful" conduct.

14  Opp. 11.  But the Guilds cannot invoke the UCL based solely on fiduciary breaches to

15  their membership.  *Amalgamated Transit Union, Local 1756 v. Superior Court*, 46 Cal.

16  4th 993, 1005 (2009) ("[A]ll [UCL] actions seeking relief on behalf of others … must

17  be brought as class actions").  Allowing a union to use the UCL to "bootstrap" out of

18  an  associational  standing  problem  would  eviscerate  the  associational  standing

19  doctrine.[25]    Individual  Counterclaimants  have  not  pled  specific  fiduciary  duty  or

20

---

21  [23] The Guilds neither seek nor can obtain "restitution" from the Agencies (A&C ¶ 528)
    and "disgorgement of profits" is not an available remedy under the UCL.  *Korea Supply*
22  *Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1152 (2003).

23  [24] Counterclaimants argue that preemption only applies in the presence of a direct
    conflict between the state and federal law.  But where (as here) there is a "pervasive"
24  federal  regulatory  scheme,  that  is  not  the  case.    *Hardin  Cty*,  842  F.3d  at  418.
    Counterclaimants' argument that the RICO statute indicates a Congressional intent to
25  permit UCL enforcement of the LMRA has no basis in case law or in logic.  RICO was
    enacted 23 years after LMRA § 302.  And Counterclaimants' argument that LMRA
26  preemption cases deal only with an exemption to Section 302 for union-dues deductions
    is wrong.  *Hardin Cty.*, 842 F.3d at 418.

27  [25] That *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1161 (9th Cir.
    2016) and *Berryman*, 152 Cal. App. 4th at 1533, involve contract claims is no basis for
28  distinguishing them.  Opp. 7.  The holding of both cases is that the UCL should not be

1    constructive fraud violations.  *Berryman*, 152 Cal. App. 4th at 1554; *supra*, § II.D.2.

2                    **(c)      Counterclaimants Also Have Not Pled a Violation of the "Unfair" Prong**

3

4            Counterclaimants may not use the UCL's "unfair" prong to back-door allegations

5    that fail to state a claim under the UCL's "unlawful" prong.  *Hadley v. Kellogg Sales*

6    *Co.*, 243 F. Supp. 3d 1074, 1104-05 (N.D. Cal. 2017); *Patt v. Antech Diagnostics, Inc.*,

7    2019 WL 6654078, at *8 (C.D. Cal. July 30, 2019).

8            Counterclaimants argue that they have "additional" allegations of unfair conduct

9    (Opp. 15-16): claims that the Agencies violated "federal and state antitrust laws" and

10   threatened to "blacklist" those who challenge packaging fee practices.  *Id.*   But these

11   allegations are not additive—they are the same legally defective claims of Sherman and

12   Cartwright Act violations, and thus cannot be brought under the "unfair" prong.

13   *Hadley*, 243 F. Supp. 3d at 1104-05; *LiveUniverse, Inc. v. MySpace, Inc.*, 304 F. App'x

14   554, 557 (9th Cir. 2008); *Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 374-75

15   (2001).  And even if the Court were to analyze the "unfair" allegations on their own,

16   they fail to state a claim. Mot. 29-30.[26]

17   **III.    CONCLUSION**

18           The Guilds' and Individual Counterclaimants' myriad standing and other defects

19   are incurable.  The federal claims should be dismissed with prejudice, with the state

20   claims remanded to state court, or alternatively dismissed with prejudice as well.[27]

21

22

23

24   used—as the Guilds try here—to "completely destroy the principle" of a substantive
     standing limitation.  *Caltex*, 824 F.3d at 1161.

25   [26] Even if the Court were to engage in some form of "balancing" test, there is no
     plausible allegation that the "unfair" behavior specifically alleged by Counterclaimants

26   (e.g., "blacklisting") outweighs the potential benefits of packaging.

     [27]  The Court has the discretion not to exercise supplemental jurisdiction over

27   compulsory state law counterclaims.  *See Scott v. Long Island Sav. Bank, F.S.B.*, 937
     F.2d 738, 743 (2d Cir. 1991); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726-

28   27 (1966).

1    Dated:   January 3, 2020                WINSTON & STRAWN LLP

2

3                                            By:  */s/ Jeffrey L. Kessler*
                                                  Jeffrey L. Kessler
4                                                 jkessler@winston.com
                                                  David L. Greenspan
5                                                 dgreenspan@winston.com
                                                  Isabelle Mercier-Dalphond
6                                                 imercier@winston.com
                                                  200 Park Avenue
7                                                 New York, NY 10166-4193
                                                  Telephone:    212-294-6700
8                                                 Facsimile:    212-294-4700

9                                                 Diana Hughes Leiden (267606)
                                                  dhleiden@winston.com
10                                                Shawn R. Obi (288088)
                                                  sobi@winston.com
11                                                333 South Grand Avenue, 38th Floor
                                                  Los Angeles, CA  90071-1543
12                                                Telephone:    213-615-1700
                                                  Facsimile:    213-615-1750

13                                                Attorneys for Plaintiff/Counterclaim-
                                                  Defendant
14                                                WILLIAM MORRIS ENDEAVOR
                                                  ENTERTAINMENT, LLC
15

16   Dated: January 3, 2020                  IRELL & MANELLA LLP
                                             MITCHELL SILBERBERG & KNUPP LLP
17

18                                           By:  */s/ Steven A. Marenberg*
                                                  Steven A. Marenberg (101033)
19                                                smarenberg@irell.com
                                                  Victor Jih (186515)
20                                                vjih@irell.com
                                                  Stephen M. Payne (310567)
21                                                spayne@irell.com
                                                  1800 Avenue of the Stars, Suite 900
22                                                Los Angeles, California 90067-4276
                                                  Telephone:    (310) 277-1010
23                                                Facsimile:    (310) 203-7199

24                                                Adam Levin (156773)
                                                  axl@msk.com
25                                                Jeremy Mittman (248854)
                                                  j2m@msk.com
26                                                Jean Pierre Nogues (84445)
                                                  jpn@msk.com
27                                                2049 Century Park E., 18th Floor
                                                  Los Angeles, CA 90067
28

21

COUNTERCLAIM-DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS COUNTERCLAIMANTS' CONSOLIDATED
COUNTERCLAIMS – CASE NO. 2:19-CV-05465-AB-AFM (FFMx)

| | | |
|---|---|---|
| 1 | | Telephone:    (310) 312-2000 |
| | | Facsimile:    (310) 312-3100 |
| 2 | | |
| | | Attorneys for Plaintiff/Counterclaim |
| 3 | | Defendant |
| | | UNITED TALENT AGENCY, LLC |
| 4 | | |

5   DATED:  January 3, 2020        KENDALL BRILL & KELLY LLP

6                                 By: /s/ Richard B. Kendall
                                    Richard B. Kendall (90072)
7                                   rkendall@kbkfirm.com
                                    Patrick J. Somers (318766)
8                                   psomers@kbkfirm.com
                                    Nicholas F. Daum (236155)
9                                   ndaum@kbkfirm.com
                                    Sarah E. Moses (291491)
10                                  smoses@kbkfirm.com
                                    10100 Santa Monica Blvd., Suite 1725
11                                  Los Angeles, California 90067
                                    Telephone:    310.556.2700
12                                  Facsimile:    310.556.2705

13                                  Attorneys for Plaintiff/Counterclaim-
                                    Defendant
14                                  CREATIVE ARTISTS AGENCY, LLC

15

16

17

18

19

20

21

22

23

24

25

26

27

28

22

COUNTERCLAIM-DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS COUNTERCLAIMANTS' CONSOLIDATED
COUNTERCLAIMS – CASE NO. 2:19-CV-05465-AB-AFM (FFMx)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ATTESTATION**

Pursuant to Local Rule 5-4.3.4(a)(2)(i), I, Jeffrey L. Kessler, attest that the other signatories listed, and on whose behalf this filing is submitted, concur in the filing content and have authorized this filing.

By: /s/ *Jeffrey L. Kessler*