Adam Levin (SBN 156773)
Gilbert S. Lee (SBN 267247)
Daniel J. Innamorati (SBN 294300)
MITCHELL SILBERBERG &
KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, CA 90067-3120
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

Steven A. Marenberg (SBN 101033)
D. Scott Carlton (SBN 239151)
Brian S. Kaewert (SBN 305140)
Joseph Montoya (SBN 322279)
PAUL HASTINGS LLP
1999 Avenue of the Stars, 27th Floor
Los Angeles, CA 90067
Telephone: (310) 620-5700
Facsimile: (310) 620-5899

Attorneys for Plaintiff/Counterclaim-Defendant
UNITED TALENT AGENCY, LLC

Richard B. Kendall (SBN 90072)
Patrick J. Somers (SBN 318766)
Nicholas F. Daum (SBN 236155)
KENDALL BRILL & KELLY LLP
10100 Santa Monica Blvd., Suite 1725
Los Angeles, California 90067

Attorneys for Plaintiff/Counterclaim-Defendant
CREATIVE ARTISTS AGENCY, LLC

Jeffrey L. Kessler (*pro hac vice*)
David L. Greenspan (*pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193

Diana Hughes Leiden
  (SBN 267606)
Shawn Obi (SBN 288088)
WINSTON & STRAWN LLP
333 South Grand Avenue
38th Floor
Los Angeles, CA 90071-1543

Attorneys for
Plaintiff/Counterclaim-Defendant
WILLIAM MORRIS ENDEAVOR
ENTERTAINMENT, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM MORRIS ENDEAVOR ENTERTAINMENT, LLC, *et al.*, <br><br> Plaintiffs and Counterclaim-Defendants, <br><br> v. <br><br> WRITERS GUILD OF AMERICA, WEST, INC., *et al.*, <br><br> Defendants and Counterclaimants, <br><br> and PATRICIA CARR, *et al.*, <br><br> Counterclaimants. | CASE NO. 2:19-cv-05465-AB-AFM <br><br> **PLAINTIFFS' SUPPLEMENTAL BRIEF REGARDING PROTECTIVE ORDER** <br><br> Judge: Hon. Alexander F. MacKinnon <br> Discovery Cut-Off: Oct. 1, 2020 <br> Pre-Trial Conference: Mar. 5, 2021 <br> Trial Date: Mar. 23, 2021 |

Mitchell
Silberberg &
Knupp LLP

**PLAINTIFFS' SUPPLEMENTAL BRIEF REGARDING PROTECTIVE ORDER**

## THE AGENCIES' SUPPLEMENTAL BRIEF

The Guilds' position only confirms that a true "Outside Counsel's Eyes Only" tier is necessary to protect the Agencies' confidences from inadvertent use or disclosure by the Guilds' insiders.  Far from being "unprecedented" (Br. 4), the customary framework permits the Agencies to protect their highly sensitive information by limiting the Guilds' review to certain designated individuals.  Such protections are amply justified when, as here, the parties have *rival* interests— whether or not they are "direct competitors."  And such safeguards are warranted when Guild outside attorneys will receive via discovery certain industry-related information, the exchange of which is a **central** issue in the negotiations underpinning this dispute.  By contrast, the Guilds will suffer no prejudice; they may challenge any improperly designated information with the Court in concrete scenarios later, an approach vastly superior to simply eliminating protections altogether.  The Agencies' proposed Protective Order should be entered.

**I.A.  There Is A Substantial Risk Of Inadvertent Disclosure Of The Agencies' Confidences.**  The Guilds ignore the basic precept that "[t]he issue concerns not good faith [of in-house counsel] but risk of inadvertent disclosure" of protected information.  *FTC v. Exxon Corp.*, 636 F.2d 1336, 1350 (D.C. Cir. 1980); *Life Techs. Corp. v. Ebioscience Inc.*, 2011 WL 1597441, at *3 (S.D. Cal. Apr. 26, 2011) ("Inadvertent disclosure … happens without intent."); Br. 19-20.

That risk is no doubt present here.  While the Guilds hail Mr. Segall's "deep familiarity with the entertainment industry and its participants" as cause for access (Br. 26), an in-house counsel's familiarity with industry intricacies provides *the reason for greater protections against dissemination*, not license for *more* access. *See Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 546 F. Supp. 2d 951, 955-59 (S.D. Cal. 2008) (counsel specifically involved in patent prosecution and client's "research and commercial activities" cannot look at adversary's patent-prosecution strategy); *Andrx Pharm., LLC v. GlaxoSmithKline, PLC*, 236 F.R.D.

Mitchell Silberberg & Knupp LLP

---

**PLAINTIFFS' SUPPLEMENTAL BRIEF REGARDING PROTECTIVE ORDER**

583, 587 (S.D. Fla. 2006) (similar).  Indeed, Mr. Segall's admission (at ¶ 8) of "familiar[ity] with many entertainment industry participants" through "personal relationships" "over four decades" confirms he is a potential information conduit. Without OCEO restrictions, he must overcome the "difficult[y] 'for the human mind to compartmentalize and selectively suppress information[.]'" *La. Pac. Corp. v. Money Mkt. 1*, 285 F.R.D. 481, 491 (N.D. Cal. 2012); *Life Techs.*, 2011 WL 1597441, at *3 ("human mind is not designed to effectively 'lock up' secrets").

Further, by acknowledging (at ¶ 8) that his industry knowledge is not "capable of being learned through library research," Mr. Segall confirms what the Agency declarants establish:  that the economic value of the Agency-possessed industry information derives from *not being widely known.  See* Shuter ¶¶ 9-13; Lafferty ¶¶ 5-10; Mercier-Dalphond ¶¶ 7-13.  This litigation, however, should not serve as a "workaround" for the Guilds to amass industry knowledge that (1) they do not possess, (2) which is undeniably a central subject in negotiations between the Agencies and the Guilds, and (3) which can be provided to other industry participants to improperly compete with the Agencies.  *See* Br. 17-18.

**B.  Inadvertent Use Or Disclosure Is A Bell That Cannot Be Un-Rung.**
The Guilds similarly do not refute the fact that dissemination of confidential information is irreversible and "much easier to address … preemptively."  *S2 Automation LLC v. Micron Tech., Inc.*, 283 F.R.D. 671, 682 (D.N.M. 2012).

Here, intra-Guild dissemination is a palpable risk.  Mr. Segall is part of the negotiating team with WGAW President David Goodman and Executive Director David Young (¶ 12), while Ms. Burdick "advise[s] WGAE Executive Director Lowell Peterson" in connection with negotiations (¶ 9).  The only protection against dissemination offered by the Guilds are (1) assurances that their in-house counsel will act in good-faith (despite mental-compartmentalization risks); and (2) assertions that no "competitively sensitive" information will be discussed (which are empty promises given the Guilds' tautological pronouncements that they do

**PLAINTIFFS' SUPPLEMENTAL BRIEF REGARDING PROTECTIVE ORDER**

not "compete" with the Agencies (Segall ¶ 23; Burdick ¶ 16)).  In light of Mr. Segall's and Ms. Burdick's access to top-level Guild personnel and examples of aggressive treatment of Agency material elsewhere, *infra* at 5, after-the-fact policing of the Protective Order would be a fool's errand.

The Guilds further seek to downplay the negotiating utility of knowing Agency information, invoking highly lawyered—yet publicly contradicted—arguments.  The Guilds claim (Br. 35) that these are "not like negotiations over a business deal, where each side has diametrically opposed interests."  But this clashes with the WGAW President's "divide and conquer" rhetoric.  Br. 3.  Similarly, Guild efforts to confine this dispute to the "top-line question of whether the Agencies will receive packaging fees" (Br. 36) are contradicted by previous Guild statements that actual economics have been explored in "a revenue sharing proposal" that "is now 2%," made in a "wide ranging and complex" presentation.[1]  Even Mr. Segall concedes—albeit with spin—that the information "would enable the Guilds to make *somewhat more informed* proposals" in negotiation (¶ 27), a statement akin to saying it could be useful to peek at your opponents' cards.[2]

**C.  The Information Which The Agencies Seek To Protect Is Undeniably Sensitive And Confidential.**  The Guilds also wrongly claim (Br. 37) that there is no authority preventing disclosure to an entity that does business with multiple competitors in the same market.  Not so.  In *La. Pac. Corp.* (Br. 15), an investor sued multiple securities brokers.  The court explained:  "*Even though LP and DBSI are not direct competitors and do not operate in the same industry*, that does not mean that LP does not have a *legitimate interest in keeping its financial and investment documents from a party against whom it very well may*

---

[1] *See* https://deadline.com/2019/06/writers-agents-new-proposal-negotiations-hollywood-1202629058/;  (June 9, 2019 article reporting WGA statements to members); *see also* Shuter ¶ 8 (also referencing such reporting).

[2] Similarly, other carefully worded statements by Mr. Segall are worth parsing—e.g., "*most* [but not all] of the Agency information" is "so far afield" (¶ 26), and "I have not been *directly* involved in the Guilds' negotiations with individual agencies (¶ 16) (all emphasis added, unless otherwise noted).

Mitchell Silberberg & Knupp LLP

3

**PLAINTIFFS' SUPPLEMENTAL BRIEF REGARDING PROTECTIVE ORDER**

*be negotiating in the future*." 285 F.R.D. at 490; *see also* Br. 17-18.

The Guilds also claim the Agencies must spell out in even more detail why (for example) documents concerning market share or "price setting strategies" or "all earnings" or specific contracts with any studio can be highly sensitive. But the law protects information which "appears *by its very nature* to be proprietary and confidential," the disclosure of which "could prove very damaging were [a competitor] to use [it] in furtherance of its own business." *Joon Assocs., Inc. v. House of Blues*, 2006 WL 2726860, at *4 (E.D. Pa. Sept. 18, 2006). In any event, the Guilds broadly mischaracterize the specificity of the Agencies' declarations. And the Guilds' main case, *Oakland v. SSA Terminals*, 2012 WL 1414075 (N.D. Cal. Apr. 23, 2012), is inapt, not least because it involved a document-by-document showing regarding (1) material *already produced*, (2) which the party sought to seal *at trial*, and (3) when a court order required in-camera review.

The Guilds also brush aside confidentiality concerns by asserting "a federally recognized right" of access "in the collective bargaining context." Br. 35. But this is not a "collective bargaining context," where any purported "duty to furnish … information stems from the [duty] imposed on *employers* and unions to bargaining in good faith." *Cowles Commc'n, Inc.*, 172 NLRB 1909 (1968). Regardless, the authorities cited by the Guild, invoking the National Labor Relations Act, do not even establish a wholesale right of access.[3]

**II. There Is No Prejudice To The Guilds.** The Guilds' claims of prejudice are also similarly unfounded. They must show "actual[] prejudice to *presentation of the … party's case, not merely [an] increase [in] the difficulty of managing the litigation*." *Intel Corp. v. VIA Techs.*, 198 F.R.D. 525, 528 (N.D. Cal. 2000). But the safeguards built into the Protective Order, allowing the Guilds

---

[3] *See Retlaw Broad. Co. v. NLRB,*172 F.3d 660, 669-70 (9th Cir. 1999) ("[A]*n interest in privacy or confidentiality can support an employer's refusal to produce information*."); *Int'l Chem. Workers v. NLRB*, 467 F.3d 742, 748-49 (9th Cir. 2006) (when employer rejected union proposals because it could not pay, a duty under *Truitt Mfg. Co.* existed to disclose only *some* financial records as proof).

Mitchell Silberberg & Knupp LLP

4

**PLAINTIFFS' SUPPLEMENTAL BRIEF REGARDING PROTECTIVE ORDER**

to challenge in Court *any* designation, leave the Guilds nothing to complain save for minor delays and inconvenience.  Any abuses can more than adequately be addressed by the Court.  *See* Br. 21-22.  Meanwhile, Guild accusations of supposed Agency "overdesignation" (centered around a single interrogatory response involving specific showrunner identities) actually underscore the need for protection.[4]  Elsewhere, the Guilds have unilaterally proclaimed that the "***public ha[s] a right to know***" Agency-designated information, proving why up-front safeguards are needed.  Lee Supp. Ex. A at 3.

Nor do the Guilds establish why in-house counsel need *complete access to every document produced*.  General statements about needing access are insufficient.[5]  Yet, despite claiming a need to "evaluate damages and thus the potential for settlement" (Br. 48), the Guilds never explain why in-house counsel needs to see *every* studio-specific, transaction-specific, or client-specific detail, rather than redacted, anonymized, or summarized information.  Similarly, the claimed need to know "the identity of the 'non-labor parties' with whom the Guilds allegedly combined" (Br. 4) never explains why in-house counsel must know *specific identities*, as opposed to anonymized information or a summary.

On the merits,[6] then, the Agencies' Protective Order is amply warranted.

---

[4] For instance, the Guilds assert a purported right to "enforce 'on pain of union discipline'" franchising regulations on members.  Lee Supp. Ex. B at 1.  But disclosure of showrunner identities, combined with other information regarding which members have and have not terminated agents, allows Guild insiders to determine who to sanction.  *See* Br. 16.

[5] *See, e.g.*, *Nevro Corp. v. Bos. Sci. Corp.*, 2017 WL 2780719, at *3 (N.D. Cal. June 27, 2017) ("Despite [in-house counsel's] strong feelings, Nevro fails to show how it will be prejudiced if [counsel] cannot access the summary[.]"); *Intel*, 198 F.R.D. at 528-30 (no specific need demonstrated to access business strategy files).

[6] Beyond the merits, the Guilds invoke various ill-conceived ad hominem attacks.  Allegations of Agency "backtracking" (Br. 28 n.5) misrepresent the record; it was only in the Guilds' last proposal that a separate "Designated House Counsel" category emerged (which the Guilds *then* maintained should get access to OCEO documents), *after which* the Agencies countered that such people (not *all* in-house counsel) should see only AEO material.  Lee Supp. Ex. B at 1-2.  And claims of Agency "foot-dragging" (Br. 29 n.6) are mistaken, not least because the Guilds omit the extensive April briefing they initiated on custodians and multiple extensions they took, including on this briefing.  Lee Supp. Ex. C at 5, D-F.

Mitchell Silberberg & Knupp LLP

5

**PLAINTIFFS' SUPPLEMENTAL BRIEF REGARDING PROTECTIVE ORDER**

DATED:  JUNE 16, 2020              MITCHELL SILBERBERG & KNUPP LLP

                                   By: */s/ Adam Levin*
                                       Adam Levin (156773)
                                       axl@msk.com
                                       Gilbert S. Lee (267247)
                                       gsl@msk.com
                                       Daniel J. Innamorati (294300)
                                       dji@msk.com
                                       2049 Century Park East, 18th Floor
                                       Los Angeles, CA 90067
                                       Telephone: (310) 312-2000
                                       Facsimile: (310) 312-3100


DATED: JUNE 16, 2020               PAUL HASTINGS LLP


                                   By: */s/ Steven A. Marenberg*
                                       Steven A. Marenberg (101033)
                                       stevenmarenberg@paulhastings.com
                                       D. Scott Carlton (239151)
                                       scottcarlton@paulhastings.com
                                       Brian S. Kaewert (305140)
                                       stevenmarenberg@paulhastings.com
                                       Joseph Montoya (SBN 322279)
                                       josephmontoya@paulhastings.com
                                       1999 Avenue of the Stars
                                       Los Angeles, CA 90067
                                       Telephone: (310) 620-5700
                                       Facsimile: (310) 620-5899



                                   Attorneys for Plaintiff/Counterclaim-
                                   Defendant
                                   UNITED TALENT AGENCY, LLC

DATED: JUNE 16, 2020               KENDALL BRILL & KELLY LLP


                                   By: */s/ Richard B. Kendall*
                                       Richard B. Kendall (90072)
                                       rkendall@kbkfirm.com
                                       Patrick J. Somers (318766)
                                       psomers@kbkfirm.com
                                       Nicholas F. Daum (236155)

Mitchell
Silberberg &
Knupp LLP

6

**PLAINTIFFS' SUPPLEMENTAL BRIEF REGARDING PROTECTIVE ORDER**

ndaum@kbkfirm.com
Sarah E. Moses (291491)
smoses@kbkfirm.com
10100 Santa Monica Blvd., Suite 1725
Los Angeles, California 90067
Telephone: (310) 556-2700
Facsimile: (310) 556-2705

Attorneys for Plaintiff
CREATIVE ARTISTS AGENCY, LLC

DATED: JUNE 16, 2020                    WINSTON & STRAWN LLP


By: */s/ Jeffrey L. Kessler*
        Jeffrey L. Kessler
        jkessler@winston.com
        David L. Greenspan
        dgreenspan@winston.com
        200 Park Avenue
        New York, NY 10166-4193
        Telephone: (212) 294-6700
        Facsimile: (212) 294-4700

        Diana Hughes Leiden (267606)
        dhleiden@winston.com
        Shawn R. Obi (288088)
        sobi@winston.com
        333 South Grand Avenue, 38th Floor
        Los Angeles, CA 90071-1543
        Telephone: (213) 615-1700
        Facsimile: (213) 615-1750

        Attorneys for Plaintiff
        WILLIAM MORRIS ENDEAVOR
        ENTERTAINMENT, LLC

Mitchell
Silberberg &
Knupp LLP

7

**PLAINTIFFS' SUPPLEMENTAL BRIEF REGARDING PROTECTIVE ORDER**

**ATTESTATION**

Pursuant to Local Rule 5-4.3.4(a)(2)(i), I, Adam Levin, attest that the other signatories listed, and on whose behalf this filing is submitted, concur in this filing's content and have authorized this filing.


By:  */s/ Adam Levin*