Stephen P. Berzon (SBN 46540)
sberzon@altber.com
Stacey Leyton (SBN 203827)
sleyton@altber.com
P. Casey Pitts (SBN 262463)
cpitts@altber.com
Rebecca C. Lee (SBN 305119)
rlee@altber.com
Andrew Kushner (SBN 316035)
akushner@altber.com
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, California 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064

Anthony R. Segall (SBN 101340)
asegall@rsglabor.com
Juhyung Harold Lee (SBN 315738)
hlee@rsglabor.com
ROTHNER, SEGALL & GREENSTONE
510 South Marengo Avenue
Pasadena, California 91101
Telephone: (626) 796-7555
Facsimile: (626) 577-0124

Ethan E. Litwin (*pro hac vice*)
elitwin@constantinecannon.com
W. Stephen Cannon (*pro hac vice*)
scannon@constantinecannon.com
CONSTANTINE CANNON LLP
335 Madison Avenue, 9th Floor
New York, New York 10017
Telephone: (212) 350-2700
Facsimile: (212) 350-2701

Ann M. Burdick (*pro hac vice*)
aburdick@wgaeast.org
Writers Guild of America, East, Inc.
250 Hudson Street, Suite 700
New York, New York 10013
Telephone: (212) 767-7800
Facsimile: (212) 582-1909

*Attorney for Defendant and Counterclaimant Writers Guild of America, East, Inc.*

*Attorneys for Defendants-Counterclaimants*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM MORRIS ENDEAVOR ENTERTAINMENT, LLC, *et al.*, <br><br> Plaintiffs and Counterclaim Defendants, <br><br> v. <br><br> WRITERS GUILD OF AMERICA, WEST, INC., *et al.*, <br><br> Defendants and Counterclaimants, <br><br> and PATRICIA CARR, *et al.* <br><br> Counterclaimants | Case No. 2:19-cv-05465-AB-AFM <br><br> **DEFENDANTS' SUPPLEMENTAL MEMO RE PROTECTIVE ORDER JOINT STIPULATION** <br><br> Hearing Date: June 30, 2020 <br> Hearing Time: 10:00 A.M. <br> Location: Courtroom #780 <br> Judge: Hon. Alexander F. MacKinnon <br> Discovery Cut-Off: Oct. 1, 2020 <br> Pre-Trial Conference: Mar. 5, 2021 <br> Trial Date: Mar. 23, 2021 |

As explained in the Guilds' portion of the Joint Stipulation, the Agencies fail to carry their burden to justify deviating from the model protective order to exclude key litigation counsel Anthony Segall and Ann Burdick from access to documents designated "Outside Counsel's Eyes Only" ("OCEO").  Excluding Mr. Segall and Ms. Burdick from these documents would severely prejudice *the Guilds*, because Mr. Segall and Ms. Burdick's familiarity with the industry is unique and essential among the Guilds' counsel.  If Mr. Segall and Ms. Burdick, who have been involved in all aspects of this case as essential members of the litigation team, are not allowed to see key documents going to core issues, the Guilds' litigation team will no longer be able to have unfettered discussions about potential legal strategies, choice of deposition witnesses, appropriate deposition questions, arguments in briefs, and the like.  Nor will the litigation team be able to share non-redacted draft briefs for editing and comment.  Excluding Mr. Segall and Ms. Burdick will also preclude the litigation team from meaningfully discussing settlement options with their clients.  The Agencies seek such limitations even though they fail to articulate (much less establish) any *specific* prejudice or harm that would result if this Court declines to enter the Agencies' proposed protective order.  Indeed, they cannot point to any decision where such a limitation has been imposed not involving direct competitors or intellectual property rights.

## I.  The Agencies cannot now seek to bolster their insufficient showing of prejudice.

The Agencies' declarations assert only broad, conclusory allegations of potential harm, which courts have held are insufficient to establish the prejudice required to justify the extreme restrictions the Agencies seek.  *See, e.g.*, *City of Oakland v. SSA Terminals, LLC*, 2012 WL 1414075, at *2 (N.D. Cal. April 23, 2012).  The Agencies provide only conclusory assertions despite having had *over a month* to prepare their portion of the Joint Stipulation—and indeed, despite being

1

aware of the parties' impasse on the issue since late March.  Dkt. 119-1 at 28-29. The Agencies cannot now attempt to support their motion with new evidence or claims of purported prejudice, as the Guilds would be denied any opportunity to respond to such new evidence.[1]  Accordingly, this Court should disregard any new evidence or claims of purported prejudice that the Agencies submit with their supplemental memorandum.  *See, e.g.*, *FDIC v. Appleton*, 2012 WL 12887400, at *5 & n.3 (C.D. Cal. Aug. 27, 2012) (refusing to consider "last minute" declaration, noting that L.R. 37 "does not contemplate the submission of new evidence after the filing of the Joint Stipulation"); *tagTrends, Inc. v. Nordstrom, Inc.*, 2014 WL 12587045, at *1 (C.D. Cal. Aug. 29, 2014) (similar); *In re Air Crash at Taipei, Taiwan*, 2002 WL 32155477, at *1 (C.D. Cal. Oct. 23, 2002) (similar).[2]

**II.     There is no possibility that the Agencies will suffer competitive injury if their proposed protective order is not approved, because the Agencies do not compete with the Guilds, and because the Guilds' franchise agreements impose *uniform* terms on all franchised talent agencies, instead of placing agencies in competition with one another.**

In-house counsel are excluded from accessing documents only if involved in "*competitive* decisionmaking," *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992) (emphases added), which exists only in instances of *direct competition* (either entities competing in the same market or with competing, overlapping intellectual property claims).  *See* Dkt. 119-1 at 42-44. There is no support for the Agencies' attempt to tie the Guilds' hands in this

---

[1] Under Civil Local Rule 37-2.3, the parties file simultaneous supplemental memoranda, and "[n]o other separate memorandum of points and authorities may be filed by either party in connection with the motion."  This Court has taken the hearing regarding the parties' protective order dispute off calendar.  Dkt. 121.

[2] Similarly, the Agencies seek to exclude all but one designated in-house Guild counsel from reviewing materials designated "Attorneys' Eyes Only," but did not address or attempt to justify this limitation at all in their portion of the Joint Stipulation.  They should not be permitted to support this request for the first time in their supplemental memorandum.  Dkt. 119-1 at 28 n.5.

litigation, because there is no dispute that the Guilds and Agencies do not compete in the same market or have overlapping property claims (intellectual or otherwise).

In fact, the nature of the Guilds' relationship with talent agencies ensures that there is no possibility of competitive injury to the Agencies. As we show below, even if this Court were inclined to break new ground by construing "competitive decisionmaking" to exist in the absence of direct competition—based somehow on the Guilds' negotiations with the Association of Talent Agencies ("ATA") or with individual talent agencies—the Agencies' proposal would still lack any justification. These negotiations present no risk that the Agencies would face a competitive disadvantage from disclosing information to the Guilds, because the nature of the Guilds' relationship with talent agencies ensures that the Guilds are not the source of any competitive injury to the Agencies (direct or otherwise).[3]

### A. By definition, the Guilds operate in a sphere that is separate and distinct from the sphere in which the Agencies operate.

The collective bargaining agreement ("CBA") that governs the employment of Guild members represented by talent agents ensures that the Guilds and agents operate in separate and distinct spheres. They are not in competition in any respect. The Guilds are labor organizations representing writers in the entertainment industry and signatories to the Minimum Basic Agreement ("MBA"), a CBA that establishes the minimum terms and conditions of employment for writers employed by production studios. *See* Dkt. 119-1 at 24.

---

[3] The Agencies also argue that their proposed protective order is required to protect the purported privacy rights of Guild members whose information the Agencies possess. Dkt. 119-1 at 16. But besides failing to identify any recognized privacy right at issue, *id*. at 40-41, the Agencies do not connect that theory to "competitive decisionmaking" or cite a single case where an OCEO designation was imposed to protect privacy rights. That is not surprising, as any third-party privacy interests will be protected by Mr. Segall's and Ms. Burdick's ethical obligations to abide by the Guilds' proposed protective order requirements. *See id*.

3

Under the National Labor Relations Act, the Guilds have the exclusive, monopolistic right to negotiate terms and conditions of employment for the writers they represent. *See Indep. Sports & Entm't, LLC v. Fegan*, 2017 WL 2598550, at *5 (C.D. Cal. May 30, 2017). Rather than perform all representational services themselves, however, the Guilds negotiated a CBA setting minimum standards (the MBA), and then *delegated* the Guilds' exclusive representational authority to negotiate individual "above-scale" contracts to approved talent agents—as is typical in sports and entertainment industries. Dkt. 119-1 at 24; *see also Fegan*, 2017 WL 2598550, at *5.[4]

The very structure of this relationship means that the Guilds cannot be in competition with the Agencies. The MBA specifically defines the subjects on which the Guilds retain the exclusive right to negotiate on a collective basis (industrywide minimums). These are *necessarily* distinct from those on which talent agents may negotiate (individual agreements for Guild members for terms and conditions that *exceed* those minimums). Because the Guilds' MBA with the production studios establishes *minimum* terms, the Agencies cannot negotiate over those subjects. And conversely, the MBA defines a separate and distinct sphere ("above-scale" terms and conditions) in which the Agencies and other talent agents can engage in negotiations. While the Agencies are in competition *with one and other* in that sphere, they are not in any competition with the Guilds.

### B.    Negotiations with competitors of the Agencies

The Guilds not only operate in a distinct sphere from talent agencies, but they also franchise all talent agencies on *equal terms*. For this additional reason, the Guilds' negotiations with competing talent agencies cannot be the source of

---

[4] Prior to April 2019, the Guilds delegated to the Agencies, via the ATA, the authority to negotiate with production companies to procure for their writer-clients individual contracts above the industry minimum pay scale established by the MBA. Dkt. 119-1 at 33.

any competitive injury to the Agencies.

As noted, prior to April 2019, talent agencies that were franchised to represent Guild members in above-scale negotiations did so under a single set of rules, the Artists' Manager Basic Agreement ("AMBA").  Dkt. 119-1 at 33.  *All* talent agencies followed the same rules governing their representation of Guild members, meaning that the AMBA did not provide any competitive advantage to one talent agency over another.  Talent agencies competed *with one and other* in the market for representing Guild members, but the Guilds did not shape that competition by, for example, providing certain agencies more advantageous terms.

The Agencies argue that the Guilds can use confidential agency information to the agencies' detriment during negotiations with other talent agencies over franchise agreements.  But the Guilds have foreclosed their ability to do so by *guaranteeing equal treatment* of all franchised talent agencies by including "Most Favored Nations" clauses in those agreements.  While the Agencies argue that these clauses are a source of competitive injury to the Agencies, Dkt. 119-1 at 16, the Agencies have it backwards.  Those clauses do not work to the Guilds' benefit, but rather provide franchised talent agencies the right to receive the benefit of any superior terms negotiated by their competitors.  *See, e.g.*, Lee Decl. Ex. 16 (Section 8) (clause providing "Agency shall have the option of accepting any or all of the more favorable terms" in any later agreement).  These clauses thus *eliminate* competition among the agencies for better franchising terms.  The Agencies' fundamental misunderstanding of those clauses reinforces why their proposed protective order is unwarranted.

DS' SUPP. MEMO RE PROTECTIVE ORDER JOINT STIP.; Case No. 2:19-cv-05465-AB-AFM

Respectfully submitted,

DATED: June 16, 2020                 Stephen P. Berzon
                                     Stacey Leyton
                                     P. Casey Pitts
                                     Rebecca C. Lee
                                     Andrew Kushner
                                     ALTSHULER BERZON LLP

                                     Anthony R. Segall
                                     Juhyung Harold Lee
                                     ROTHNER, SEGALL & GREENSTONE

                                     Ethan E. Litwin
                                     W. Stephen Cannon
                                     CONSTANTINE CANNON LLP

                                     */s/P. Casey Pitts*
                                     P. Casey Pitts

                                     *Attorneys for Defendants and Counterclaimants*

DATED: June 16, 2020                 Ann M. Burdick (pro hac vice)
                                     aburdick@wgaeast.org
                                     Writers Guild of America, East, Inc. 250
                                     Hudson Street, Suite 700
                                     New York, New York 10013
                                     Telephone: (212) 767-7800
                                     Facsimile: (212) 582-1909

                                     */s/Ann M. Burdick*
                                     Ann M. Burdick

                                     *Attorney for Defendant and Counterclaimant Writers Guild of America, East, Inc.*

6

DS' SUPP. MEMO RE PROTECTIVE ORDER JOINT STIP.; Case No. 2:19-cv-05465-AB-AFM