1
2
3
4
5
6
7
8               UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| WILLIAM MORRIS ENDEAVOR ENTERTAINMENT, LLC, *et al.*, | Case No. 2:19-cv-05465-AB-AFM |
| Plaintiffs and Counterclaim Defendants, | **ORDER DENYING PLAINTIFFS AND COUNTERCLAIM DEFENDANTS' PARTIAL MOTION TO DISMISS FIRST AMENDED CONSOLIDATED COUNTERCLAIMS [Dkt. No. 117]** |
| v. | |
| WRITERS GUILD OF AMERICA, WEST, INC., *et al.*, | |
| Defendants and Counterclaimants. | |

## I. INTRODUCTION

Before the Court is Plaintiffs and Counterclaim Defendants William Morris Endeavor Entertainment, LLC's ("WME"), Creative Artists Agency, LLC's ("CAA"), and United Talent Agency, LLC's ("UTA") (collectively "the Agencies") partial motion to dismiss Counterclaimants Writers Guild of America, West, Inc.'s, Writers Guild of America, East, Inc.'s ("the Guilds"), Patricia Carr's, Ashley Gable's, Barbara Hall's, Deric A. Hughes's, Deirdre Mangan's, David Simon's, and Meredith Stiehm's

1   (collectively "Counterclaimants") first amended consolidated counterclaims.[1] (Dkt.

2   No. 117.) Counterclaimants oppose the Agencies' motion. (Dkt. No. 122). The Court

3   heard oral argument regarding the Agencies' motion on July 10, 2020. For the reasons

4   stated below, the Court **DENIES** the Agencies' partial motion to dismiss.

5   **II. BACKGROUND**

6       This case arises from a dispute between three of the largest talent agencies in

7   Hollywood and two labor unions that represent writers in the entertainment industry.

8   As the parties are familiar with the factual allegations at issue, the Court includes only

9   a brief summary here. (*See* Dkt. No. 104 at 2–6) (setting out factual background in

10  greater detail).

11      **A. Factual background**

12      The Guilds serve as the exclusive collective bargaining representative for their

13  writer-members in negotiations with film and television producers. (Dkt. No. 112

14  "FACC" ¶ 46.) Historically, the Guilds delegated their authority to represent writers in

15  negotiations through franchise agreements with talent agents. (*Id.* ¶ 16.) As a

16  condition of being franchised, agents are subject to regulations promulgated by the

17  Guilds. (*Id.*)

18      Prior to this dispute, from 1976 to April 2019, the Guilds were parties to the

19  Artists' Manager Basic Agreement ("AMBA"). (*Id.* ¶¶ 160–61, 173.) The AMBA

20  permitted talent agencies to package talent in exchange for packaging fees, albeit

21  while reserving the Guilds' objections to agencies accepting packaging fees. (*Id.*

22  ¶¶ 160–61, 166.) On April 6, 2018, the Guilds provided notice to the Association of

23  Talent Agents ("ATA"), a trade association comprised of approximately 120 talent

---

[1] On July 17, 2020, UTA, the Guilds, Counterclaimant Barbara Hall, and Counterclaimant Deirdre Mangan filed a joint stipulation voluntarily dismissing with prejudice: (1) all claims filed by UTA against the Guilds, (2) all counterclaims filed by the Guilds against UTA, and (3) all counterclaims filed by Counterclaimant Barbara Hall and by Counterclaimant Deirdre Mangan against UTA. (Dkt. No. 135.)

2.

1    agencies, of the Guilds' intent to terminate the AMBA. (*Id.* ¶¶ 138, 166.) Between

2    April 2018 and April 2019, the Guilds and the ATA unsuccessfully attempted to

3    negotiate a new agreement to replace the AMBA. (*Id.* ¶¶ 166–70.)

4         On April 13, 2019, seven days after the AMBA expired, the Guilds formally

5    implemented a new Code of Conduct. (*Id.* ¶¶ 173–74.) The Code of Conduct prohibits

6    talent agencies from collecting packaging fees on any project on which their writer-

7    client works. (*Id.* ¶ 171.) In implementing the Code of Conduct, the Guilds instructed

8    their members to terminate any agent that had not agreed to its terms. (*Id.* ¶ 174.)

9    Subsequently, the vast majority of the Guilds' members terminated their relationships

10   with their agents. (*Id.*)

11        **B. Procedural background**

12        On June 24, 2019, WME filed a complaint against the Guilds alleging violation

13   of Section 1 of the Sherman Act. (Dkt. No. 1.) On September 12, 2019, the Court

14   ordered that three cases filed by WME, CAA, and UTA be consolidated for all

15   purposes including trial. (Dkt. No. 40.) Pursuant to this Court's September 12, 2019

16   order, the Agencies filed their consolidated complaint on September 27, 2019.[2] (Dkt.

17   No. 42.)

18        On October 18, 2019, Counterclaimants filed their answer to the Agencies

19   consolidated complaint and their consolidated counterclaims. (Dkt. No. 44.) The

20   Agencies moved to dismiss these consolidated counterclaims, and on April 27, 2020,

21   the Court granted in part and denied in part the Agencies' motion to dismiss. (Dkt.

22   Nos. 54, 104.) In particular, the Court (1) dismissed without leave to amend

23   Counterclaimants' federal price-fixing claim for lack of antitrust standing, (2)

24   dismissed without leave to amend Counterclaimants' claims under the Racketeer

25   Influenced and Corrupt Organization Act ("RICO"), (3) concluded that

26   _____

27   [2] Counterclaimants subsequently moved to dismiss the Agencies' consolidated
     complaint, and moved in the alternative for judgment on the pleadings. (Dkt. Nos. 43,

28   47.) The Court denied Counterclaimants' motion on January 8, 2020 (Dkt. No. 73.)

Counterclaimants had demonstrated standing under California's Cartwright Act, and that they had stated price-fixing claim under the Cartwright Act, (4) dismissed Counterclaimants' federal and state group boycott claims, (4) dismissed the Guilds' representative claims for breach of fiduciary duty and constructive fraud for lack of associational standing, (5) concluded that Individual Counterclaimants[3] had stated a claim for breach of fiduciary duty, (6) dismissed Individual Counterclaimants' constructive fraud claim, (7) dismissed the Guilds' UCL claim brought on their own behalf, (8) concluded that Individual Counterclaimants had stated a claim under California's Unfair Competition Law ("UCL"), (9) concluded that Counterclaimants had stated a claim for declaratory relief, and (10) concluded that Counterclaimant Barbara Hall had stated claims for breach of contract and promissory estoppel. (Dkt. No. 104.)

On May 11, 2020, Counterclaimants filed their First Amended Consolidated Counterclaims. (Dkt. No. 112 "FACC".) In their FACC, Counterclaimants realleged the following causes of action: (1) per-se price fixing in violation of the Cartwright Act, (2) breach of fiduciary duty (brought by Individual Counterclaimants on their own behalf), (3) constructive fraud (brought by Individual Counterclaimants on their own behalf), (4) violation of the UCL (brought by Individual Counterclaimants and the Guilds on their own behalf), (5) declaratory relief, (6) breach of contract (brought by Counterclaimant Barbara Hall on her own behalf), (7) promissory estoppel (brought by Counterclaimant Barbara Hall on her own behalf), (8) an equitable claim for breach of fiduciary duty (brought by the Guilds on behalf of their members), and (9) constructive fraud (brought by the Guilds on behalf of their members). (*Id.* ¶¶ 190–273.) Counterclaimants did not reallege their federal price-fixing claim, federal RICO claims, or federal and state group boycott claims. (*Id.*) The Agencies

---

[3] "Individual Counterclaimants" refers to Patricia Carr, Ashley Gable, Barbara Hall, Deric A. Hughes, Deirdre Mangan, David Simon, and Meredith Stiehm.

4.

1    now move to dismiss Counterclaimants' FACC in part.

2    **III.   LEGAL STANDARD**

3          Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to

4    dismiss a pleading for "failure to state a claim upon which relief can be granted." Fed.

5    R. Civ. P. 12(b)(6).

6          To defeat a Rule 12(b)(6) motion to dismiss, a pleading must provide enough

7    factual detail to "give the defendant fair notice of what the. . . claim is and the grounds

8    upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The

9    pleading must also be "plausible on its face," that is, it "must contain sufficient factual

10   matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

11   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570). A

12   plaintiff's "factual allegations must be enough to raise a right to relief above the

13   speculative level." *Twombly,* 550 U.S. at 555. "The plausibility standard is not akin to

14   a 'probability requirement,' but it asks for more than a sheer possibility that a

15   defendant has acted unlawfully." *Id*. Labels, conclusions, and "a formulaic recitation

16   of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

17         A pleading may be dismissed under Rule 12(b)(6) for the lack of a cognizable

18   legal theory or the absence of sufficient facts alleged under a cognizable legal theory.

19   *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). When ruling on

20   a Rule 12(b)(6) motion, "a judge must accept as true all of the factual allegations

21   contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But a court

22   is "not bound to accept as true a legal conclusion couched as a factual allegation."

23   *Iqbal*, 556 U.S. at 678 (2009) (internal quotation marks omitted).

24         A court generally may not consider materials other than facts alleged in the

25   pleading and documents that are made a part of the pleading. *Anderson v. Angelone*,

26   86 F.3d 932, 934 (9th Cir. 1996). However, a court may consider materials if (1) the

27   authenticity of the materials is not disputed and (2) the plaintiff has alleged the

28

5.

existence of the materials in the pleading or the pleading "necessarily relies" on the materials. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (citation omitted). The court may also take judicial notice of matters of public record outside the pleadings and consider them for purposes of the motion to dismiss. *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Lee*, 250 F.3d at 689-90.

## IV.   DISCUSSION

### 1.   The Court declines to reconsider its prior ruling on Counterclaimants' standing under the Cartwright Act.

The Agencies move for this Court to reconsider its prior ruling that Counterclaimants have standing under California's Cartwright Act.[4] (Dkt. No. 117 at 5–11.) A motion for reconsideration "is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J Multnomah Cty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) "Motions for reconsideration are disfavored and rarely granted . . . [and] are not to be used to test new legal theories that could have been presented when the original motion was pending." *See Collins v. U.S. Citizenship and Naturalization Servs.*, No. CV 11-9909-JFW (SSx), 2013 WL 776244, at *1 (C.D. Cal. Feb. 6 2013) (internal quotation marks omitted).

Here, the Agencies do not present new evidence, cite an intervening change in controlling law, or argue that the Court committed clear error or reached a decision that was manifestly unjust. (*See* Dkt. No. 117 at 5–11.) Rather, the Agencies argue

---

[4] Although the Agencies dispute that they are moving for reconsideration, "[b]oth the earlier [motion to dismiss] and the current [motion to dismiss] seek the same relief. Thus, the Court construes this [motion] as a request for reconsideration." *See Lai v. Quality Loan Serv. Cop.*, No. CV 10-2308 PSG (PLAx), 2010 WL 2228507, at *2 (C.D. Cal. June 2, 2010); *see also* Dkt. No. 69 at 6 n.6 (arguing that "Counterclaimants' lack of antitrust standing dooms their duplicative Cartwright Act claims.").

that three factors identified in *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519 (1983) ("*AGC*")—including (1) whether Counterclaimants participate in the same market as the Agencies, (2) the directness of Counterclaimants' injuries, and (3) the risk of duplicative recovery— "compel" the conclusion that Counterclaimants lack standing under the Cartwright Act. (*Id.* at 1, 5–11.) However, as previously noted, these arguments rest on the assumption "that the interpretation of California's antitrust statute [i]s coextensive with the Sherman Act," which "is no longer the law in California." *See Samsung Electronics Co., Ltd. v. Panasonic Corp.*, 747 F.3d 1199, 1205 n.4 (9th Cir. 2014) (citing *Aryeh v. Canon Business Solutions, Inc.*, 292 P.3d 871 (Cal. 2013)); *see also* Cal. Bus. & Prof. Code § 16750(a) (conferring standing on "any person who is injured in his or her business or property by reason of anything forbidden or declared unlawful by this chapter, regardless of whether such injured person dealt directly or indirectly with the defendant."). The Agencies' disagreement with this decision "is an inadequate reason for [a motion for reconsideration] to be granted." *See Williams v. McGraw-Hill Inc.*, No. CV 10-06062 GAF (SHx), 2011 WL 13217468, at *2 (C.D. Cal. Jan. 20, 2011). Accordingly, the Agencies' motion for reconsideration is **DENIED**.

> **2. The Guilds have demonstrated associational standing to bring an equitable claim for breach of fiduciary duty and a claim for constructive fraud on behalf of their members.**

The Agencies move to dismiss the Guilds' representative claims for breach of fiduciary duty and constructive fraud on the ground that the Guilds lack associational standing to pursue these claims on behalf of their members. (Dkt. No. 117 at 11–15.)

An organization has standing to bring suit on behalf of its members where"[1] its members would otherwise have standing to sue in their own right; [2] the interests [the organization] seeks to protect are germane to the organization's purpose; and [3] neither the claim asserted nor the relief requested requires the participation of

individual members in the lawsuit." *See Hunt v. Wash State Apply Advert. Comm'n*, 432 U.S. 333, 343 (1977). The Court previously determined that resolving the Guilds' representative claims for breach of fiduciary duty and constructive fraud would require a litany of individual assessments that would require participation of the Guilds' writer-members. (*See* Dkt. No. 104 at 14–15.) The Court noted that Counterclaimants' conclusory allegation that the Agencies never obtained their writer-clients' valid, informed consent did not negate the need for individual writers to participate. (*Id*. at 15)

In their FACC, the Guilds now allege that the Agencies fail "as a matter of uniform policy" to disclose "the material terms of their packaging agreements, including the terms defining the Agencies' upfront and backend payments, to their writer-clients." (FACC ¶ 87.) The Guilds further allege that a direct conflict of interest exists between writers and the Agencies in every packaging fee arrangement "[b]ecause the third component of all packaging fee arrangements is based on defined gross profits," such that "any amount paid to writers as compensation directly reduces the amount the Agenc[ies] receive[] as part of the third component of the packaging fee." (*Id.* ¶¶ 81, 82.) In realleging their representative claims for breach of fiduciary duty and constructive fraud, the Guilds clarify that they seek only declaratory and injunctive relief and do not seek monetary damages. (Dkt. No. 122 at 4–7.)

Taking these amended allegations into account, the Court is persuaded that neither the claims asserted—an equitable claim for breach of fiduciary duty and a claim for constructive fraud—nor the relief requested (declaratory relief and an injunction prohibiting the Agencies' receipt of packaging fees) would require individual writers to participate. As the Court previously stated, "[t]he elements of a claim for breach of fiduciary duty are (1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damages proximately caused by that breach." (Dkt. No. 104 at 14 (citing *IIG Wireless, Inc. v. Yi*, 231 Cal. Rptr. 3d 771, 787 (Ct. App. 2018))). In the context of an agent's failure to disclose material terms of an agreement to the

8.

principal, a failure to provide material information itself constitutes harm. *See Knutson v. Foste*r, 236 Cal. Rptr. 3d 473, 487 (Ct. App. 2018) ("These breaches of [the agent's] fiduciary duty caused [the principal] harm initially by failing to provide her with all the information she needed to make an informed decision about entering into [an agreement.]"). Constructive fraud, by contrast, "comprises any act, omission or concealment involving breach of legal or equitable duty, trust or confidence which results in damage to another even though the conduct is not otherwise fraudulent," such that "[m]ost acts by an agent in breach of his fiduciary duties constitute constructive fraud."[5] *See Assilzadeh v. Cal. Fed. Bank*, 98 Cal. Rptr. 2d 176, 186 (Ct. App. 2000).

In alleging their representative claims for breach of fiduciary duty and constructive fraud, the Guilds argue that the Agencies maintained a uniform policy of failing to disclose the material terms of their packaging agreements to their writer-clients. (FACC ¶ 87). Evidence of such a policy could show: (1) that the Agencies maintained fiduciary relationships with numerous writer-members, (2) that the Agencies breached their fiduciary duties by failing to provide writers with reasonably obtainable material information, and (3) that the Guilds' writer-members suffered injury in the form of failing to receive material information necessary to make informed decisions on any packaging agreement. Accordingly, the Guilds have shown that their representative claims for breach of fiduciary duty and constructive fraud can

---

[5] As Counterclaimants correctly argue in opposition to the Agencies' motion to dismiss, California law "presume[s] reasonable reliance upon the misrepresentation or nondisclosure of the fiduciary, absent direct evidence of a lack of reliance" *See Estate of Gump*, 2 Cal. Rptr. 2d 269, 281 (Ct. App. 1991). Although the Agencies correctly note that this presumption of reasonable reliance is rebuttable, (Dkt. No. 127 at 3 n.4), at the pleading stage the Court is unable to determine whether there is any direct evidence of a lack of reliance, thus necessitating individual writers' participation. The parties may revisit this issue at summary judgment.

1  be established without individualized proof from litigants not before the Court.[6]

2  Similarly, the relief requested by the Guilds would not require individual

3  participation of the Guilds' writer-members. As a general matter, "[i]ndividualized

4  proof from the members is not needed where, as here, declaratory and injunctive relief

5  is sought rather than monetary damages." *See Assoc. Gen. Contractors of Am. v.*

6  *Metropolitan Water Dist. of S. Cal.*, 159 F.3d 1178, 1181 (9th Cir. 1998). Although

7  the Agencies argue that "plenty of injunction cases have been dismissed because of

8  the need for individualized proof," (Dkt. No. 117 at 13 (quoting *Pharmaceutical Care*

9  *Mgmt. Ass'n v. Rowe*, 429 F.3d 294, 314 (1st Cir. 2005) (Boudin, J. and Dyk, J.,

10  concurring))), each of the cited authorities in support of this argument addressed

11  circumstances where individualized proof was necessary to establish the claim at

---

[6] The Agencies arguments to the contrary do not demonstrate otherwise. Although the Agencies contend that the Guilds' breach of fiduciary duty claim would require "fact-specific determination[s] that include[] the nature of the transaction, the level of sophistication of the parties, the harm at issue, and the causation of the harm," (Dkt. No. 117 at 13–14), none of those determinations are necessary here where the Guilds allege that the Agencies maintain a uniform policy of failing to disclose the terms of packaging agreements to all writer-clients, and that virtually no writer has ever seen a packaging agreement. (*See* FACC ¶¶ 85–87.) Moreover, although the Agencies contend that they will need individual writers to participate to defend against the Guilds' representative claims, (Dkt. No. 117 at 14; Dkt. No. 127 at 2–3), the focus of the associational standing inquiry is on whether claims asserted or relief requested require individual members to participate as parties, and "the heart of [the Guilds' claims] involve[] systemic policy violations that will make extensive individual participation unnecessary." *See Spindex Physical Therapy USA, Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1293 (9th Cir. 2014) (citing *Pa. Psychiatric Soc'y v. Green Spring Health Servs, Inc.*, 280 F.3d 278, 286 (3d Cir. 2002)); *See also W. Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 484 (9th Cir. 2011) ("Because . . . neither the claims asserted nor the relief requested requires [individual members'] participation *as parties*, [the organization] has associational standing[.]") (emphasis added); *and see Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 601–02 (7th Cir. 1993) ("We can discern no indication in *Warth*, *Hunt*, or *Brock* that the Supreme Court intended to limit representational standing to cases in which it would not be necessary to take any evidence from individual members of an association . . . Rather, the third prong of *Hunt* is more plausibly read as dealing with situations in which it is necessary to establish 'individualized proof' . . . for litigants not before the Court in order to support the cause of action.") (internal citation omitted).

10.

issue. *See Pharmaceutical Care*, 429 F.3d at 314 n.10. Having determined that the representative fiduciary duty and constructive fraud claims at issue here would not require individualized proof, the Court finds this argument unavailing.

Because the Guilds have demonstrated that their representative claims for breach of fiduciary duty and constructive fraud would not require individual participation, and that individual participation is not necessary for the injunctive and declaratory relief requested, the Agencies' motion to dismiss the Guilds' representative claims for breach of fiduciary duty and constructive fraud for lack of associational standing is **<u>DENIED</u>**.[7]

**3. The Guilds have demonstrated associational standing to bring a Cartwright Act price-fixing claim on behalf of their members.**

The Agencies move to dismiss the Guilds' representative claim for violation of California's Cartwright Act for a lack of associational standing. (Dkt. No. 117 at 15.) In particular, the Agencies contend that individual participation of the Guilds' members would be required to demonstrate injury, even though the Guilds do not seek monetary damages on behalf of their members.[8] (*Id.*) As the Court previously stated, "[t]he elements of [a] Cartwright Act claim are the formation and operation of the conspiracy, (2) the wrongful act or acts done pursuant thereto, and (3) the damage resulting from such act or acts." (*See* Dkt. No. 104 at 9–10 (quoting *Marsh v. Anesthesia Servs. Med. Grp., Inc.*, 132 Cal. Rptr. 3d 660, 670–71 (Ct. App. 2011))).

---

[7] The Guilds' allegations clearly demonstrate that they meet the two additional prongs for associational standing (i.e. that the Guilds' members would have standing to sue in their own right, and that the interests the Guilds seek to protect are germane to the Guilds' purpose), and the Agencies do not move to dismiss the Guilds' representative claims based on these two prongs. (*See* Dkt. No. 117.)

[8] The Court rejects the Agencies' argument that the Guilds lack associational standing because their individual members do not have standing under the Cartwright Act, as the Court declines to reconsider its prior ruling that Counterclaimants have standing under the Cartwright Act.

However, in cases involving price-fixing under the Cartwright Act, the third element—"not the amount of compensable damage, but the fact of damaging impact on the plaintiff or plaintiff class—may be established by presumption or inference." *See Cal. Dental Ass'n v. Cal. Dental Hygienists' Assn*., 271 Cal. Rptr. 410, 418 (Ct. App. 1990) (citing *B.W.I Custom Kitchen v. Ownes-Illinois, Inc*., 235 Cal. Rptr. 228 (Ct. App. 1987)). Indeed, California state courts have explicitly recognized that individual members of an organization need not participate in a representative Cartwright Act action where the organization seeks injunctive relief only. *See Cal. Dental Ass'n*, 271 Cal. Rptr. at 417–19 (applying California's standard for associational standing but noting that Cartwright Act plaintiffs could meet the federal associational standing test where they seek injunctive relief only). Accordingly, because neither the Cartwright Act price-fixing claim nor the injunctive and declaratory relief requested by the Guilds would require individual members to participate as parties, the Court **DENIES** the Agencies' motion to dismiss the Guilds' representative Cartwright Act claim for lack of associational standing.[9]

### 4. The Guilds have demonstrated Article III standing to obtain injunctive relief.

The Agencies move to dismiss the Guilds' claims for breach of fiduciary duty, constructive fraud, violation of the Cartwright Act, and violation of California's UCL on the ground that the Guilds lack Article III standing to obtain injunctive relief against the Agencies' packaging fee practices. (Dkt. No. 117 at 16–24.)

To demonstrate Article III standing to obtain injunctive relief, "a plaintiff must show that he is under threat of suffering injury in fact that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical;

---

[9] As with the Guilds' representative claims for breach of fiduciary duty and constructive fraud, the Guilds' Cartwright Act allegations clearly demonstrate that their individual members would have standing to sue in their own right, and that the interests they seek to protect are germane to the Guilds' purpose.

1  it must be fairly traceable to the challenged action of the defendant; and it must be

2  likely that a favorable judicial decision will prevent or redress the injury." *Summers v.*

3  *Earth Island Inst.*, 555 U.S. 488, 493 (2009) (internal quotation marks omitted). At the

4  pleading stage, the Court "must accept as true all material allegations of the

5  complaint, and must construe the complaint in favor of the complaining party . . . to

6  determine whether the nonmoving party has clearly allege[d] facts demonstrating each

7  element of standing." *See Confederated Tribes and Bands of Yakama Nation v.*

8  *Yakima Cty.*, No. 19-35199, 2020 WL 3495307, at *5 (9th Cir. June 29, 2020)

9  (internal quotation marks and citations omitted).

10        Taking Counterclaimants' amended allegations into account, the Guilds have

11  sufficiently alleged facts demonstrating each element of Article III standing. First, the

12  Guilds have plausibly alleged an actual injury that is concrete and particularized by

13  alleging that the Agencies continue to receive packaging fee payments under

14  previously negotiated agreements, which directly reduces writer compensation and the

15  Guilds' dues revenue on an ongoing basis. (FACC ¶¶ 95–96, 129, 135, 137); *see*

16  *Construction Indus. Ass'n of Sonoma Cty. v. City of Petaluma*, 522 F.2d 897, 903 (9th

17  Cir. 1975) (holding that an association "easily satisf[ied] the 'injury in fact' standing

18  requirement" where it alleged damages due to lost revenues). This alleged injury is

19  fairly traceable to the Agencies' challenged conduct, as it is the result of contracts

20  allegedly negotiated by the Agencies on behalf of the Guilds' writer-members. *See*

21  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (holding that "there must

22  be a casual connection between the injury and the conduct complained of—the injury

23  has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . .

24  th[e] result [of] the independent action of some third party not before the Court.")

25  (internal quotation marks omitted). Finally, the Guilds' injury is likely to be redressed

26  by the injunctive relief sought, as the Guilds seek an injunction prohibiting the

27  Agencies' continued receipt of packaging fees. (*See* Prayer for Relief ¶¶ 5, 6.) This

28  injunctive relief would likely redress the Guilds' injury by increasing the Guilds'

13.

writer-members' profit participation, which in turn would increase the Guilds' dues revenue.[10] (FACC ¶¶ 95–96, 129.)

Accordingly, because the Guilds have pleaded factual allegations demonstrating Article III standing to obtain injunctive relief against the Agencies' packaging fee practices, the Agencies' motion to dismiss the Guilds' claims for breach of fiduciary duty, constructive fraud, violation of the Cartwright Act, and violation of California's UCL, for a lack of Article III standing is **<u>DENIED</u>**.

### 5. Counterclaimants' constructive fraud claims based on fraudulent omission meet Rule 9(b)'s heightened pleading standard.

The Agencies move to dismiss the Guilds' representative claim for constructive fraud and Individual Counterclaimants' claim for constructive fraud on the ground that Counterclaimants fail to meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b). (Dkt. No. 117 at 24–25.)

As previously stated, "constructive fraud comprises any act, omission or concealment involving breach of legal or equitable duty, trust or confidence which results in damage to another even though the conduct is not otherwise fraudulent." *Assilzadeh*, 98 Cal. Rptr. 2d at 186. "Most acts by an agent in breach of his fiduciary duties constitute constructive fraud." *Id.* In particular, "[t]he failure to disclose a material fact to [the] principal which might affect the fiduciary's motives or the principal's decision, which is known (or should be known) to the fiduciary, may constitute constructive fraud." *Id.*

---

[10] Although the Agencies contend that this relief constitutes monetary disgorgement, nowhere in Counterclaimants' Prayer for Relief do they seek to "compel [the Agencies] to surrender all money obtained through an unfair business practice[.]" *See Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 944 (Cal. 2003). Rather, Counterclaimants seek an injunction prohibiting the Agencies' continued receipt of packaging fees. *See* Prayer for Relief ¶¶ 5–6. Moreover, although the Court concludes that Counterclaimants have demonstrated Article III standing to obtain injunctive relief, the Court does not decide the scope of any injunctive relief Counterclaimants may obtain.

"Like fraud claims, constructive fraud claims [under California law] are subject to the particularity requirements of Rule 9(b)." *See Edumoz, LLC v. Republic of Mozambique*, No. CV 13-02309-MMM (CWx), 2014 WL 12802921, at \*30 (C.D. Cal. July 21, 2014) (alteration added). Although Rule 9(b)'s heightened pleading standard is "somewhat relaxed" in the context of fraudulent omission, "a plaintiff alleging fraudulent omission or concealment must still plead the claim with particularity." *See Asghari v. Volkswagen Grp. of Am., Inc*., 42 F. Supp. 3d 1306, 1325 (C.D. Cal. 2013) (collecting cases). "[T]o plead the circumstances of omission with specificity, plaintiff must describe the content of the omission and where the omitted information should or could have been revealed, as well as provide representative samples of advertisements, offers, or other representations that plaintiff relief on to make her purchase and that failed to include the allegedly omitted information." *See Eisen v. Porsche Cars N. Am., Inc*., No. CV 11-9405 CAS (FEMx), 2012 WL 841019, at \*3 (C.D. Cal. Feb. 22, 2012) (internal quotation marks omitted).

Taking Counterclaimants' amended allegations into account, the Court is persuaded that both the Guilds and Individual Counterclaimants have alleged their fraudulent omission claims with sufficient particularity. With respect to the Guilds, the Guilds allege "what" was omitted (the material terms of packaging agreements, including terms defining the Agencies' upfront and backend payments, as well as inherent conflicts of interest arising from the Agencies' receipt of packaging fees [FACC ¶¶ 81–83, 87, 271]); "why" such information was not disclosed (because the Agencies allegedly generate profits from packaging fees and thus have an incentive to maximize such fees at the expense of their writer-clients [*Id*. ¶¶ 84, 95, 99, 107]); "how" the Agencies allegedly omitted the information (by telling their writer-clients that packaging benefits writers because they will not pay a commission fee while failing to disclose packaging agreement terms as a matter of uniform policy [*Id*. ¶¶ 119–20]); and "when" the allegedly fraudulent omissions occurred (from June 2015 through to the present, during which time the Agencies allegedly never disclosed

15.

1  packaging agreement terms to their writer-clients [*Id.* ¶¶ 87, 271]). The Guilds further

2  allege that the Agencies' alleged conflicts of interest and the material terms of

3  packaging agreements should have been disclosed "each time [the Agencies]

4  represented [writer-members] in procuring or seeking to procure employment with a

5  studio from which the Agencies received or sought to receive a packaging fee,

6  including in communications conducted by phone, email, or in-person[.]" (*Id.* ¶ 271.)

7  The Guilds thus adequately plead fraudulent omission. *See Asghari*, 42 F. Supp. 3d at

8  1326–27 (concluding that plaintiffs adequately pleaded fraudulent omission where

9  they alleged with specificity what information was omitted, why the information was

10  omitted, how the information was omitted, and when the information was omitted).

11      Individual Counterclaimants similarly plead fraudulent omission with sufficient

12  particularity. In addition to pleading precisely the same information with respect to the

13  "what," "why," and "how" of the Agencies' allegedly fraudulent omissions,

14  Individual Counterclaimants additionally plead who their talent agents were, and

15  when the principal-agent relationships between Individual Counterclaimants and the

16  Agencies began and ended. (FACC ¶¶ 25–30, 81–83, 87, 107, 119–20, 225).

17  Individual Counterclaimants thus adequately plead fraudulent omission. *See Asghari*,

18  42 F. Supp. 3d at 1326–27.

19      Because Counterclaimants have pleaded their constructive fraud claims with

20  sufficient particularity, the Agencies' motion to dismiss these claims for failure to

21  meet Rule 9(b)'s heightened pleading standard is **DENIED**.

22      **6. Counterclaimants' UCL claims and declaratory relief claims survive.**

23      The Agencies move to dismiss Counterclaimants' derivative UCL claims and

24  declaratory relief claims on the ground that Counterclaimants' underlying Cartwright

25  Act claims and constructive fraud claims fail. (Dkt. No. 117 at 25.) However, having

26  concluded that Counterclaimants' underlying Cartwright Act claims and constructive

27  fraud claims survive, the Court **DENIES** the Agencies' motion to dismiss

28  Counterclaimants' derivative UCL claims and declaratory relief claims.

16.

1

**V. CONCLUSION**

2         For the reasons stated above, the Court **<u>DENIES</u>** the Agencies' partial motion

3   to dismiss.

4

5   **IT IS SO ORDERED.**

6

7   Dated: August 12, 2020   _____

8                            HONORABLE ANDRÉ BIROTTE JR.
                             UNITED STATES DISTRICT COURT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

17.