UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM MORRIS ENDEAVOR ENTERMAINT, LLC, CREATIVE ARTISTS AGENCY, LLC, and UNITED TALENT AGENCY, LLC<br><br>Plaintiffs,<br><br>v.<br><br>WRITERS GUILD OF AMERICA, WEST, INC., and WRITERS GUILD OF AMERICA, EAST, INC.,<br><br>Defendants. | Case No. 2:19-cv-05465-AB (AFMx)<br><br>**ORDER DENYING WILLIAM MORRIS ENDEAVOR'S MOTION FOR PRELIMINARY INJUNCTION** |

## I. INTRODUCTION

Before the Court is Plaintiff William Morris Endeavor Entertainment, LLC's ("Plaintiff") Motion for Preliminary Injunction against Defendants Writers Guild of America, West, Inc. and Writers Guild of America, East, Inc. ("Defendants"). (Dkt. No. 157, ("Mot.")). Defendants filed a consolidated opposition to the Motions.[1] (Dkt.

---

[1] Defendants' opposition addressed former Plaintiff Creative Artists Agency's ("CAA") Motion for Preliminary Injunction which was mooted by the parties' notice

1.

No. 176, ("Opp'n")). Plaintiff filed a reply. (Dkt. No. 202). The Court heard oral argument regarding Plaintiff's Motion on December 18, 2020. For the reasons stated below, the Court **DENIES** Plaintiff's Motion for Preliminary Injunction.

## II. BACKGROUND

The Court and the parties are well aware of the complex history of this case and the legal issues involved. (*See* Dkt. No. 143 at 2-6). Plaintiff, along with two other talent agencies and now former plaintiffs, filed suit against Defendants alleging that Defendants' boycott of Plaintiffs' agencies and agents constituted antitrust violations under the Sherman Act. (*See generally* Dkt. No. 42, First Consolidated Complaint ("FCC")). Defendants filed a motion to dismiss the FCC and the Court denied the motion on January 6, 2020. (Dkt. No. 70). Defendants filed counterclaims against Plaintiffs (Dkt. No. 112), and on July 10, 2020, the Court heard oral arguments on Plaintiffs' partial motion to dismiss Defendants' First Amended Consolidated Counterclaims, (Dkt. Nos. 129). The Court denied the motion. (Dkt. No. 143).

The parties subsequently resumed settlement negotiations. On July 15, 2020, former Plaintiff United Talent Agency ("UTA") reached a settlement and franchise agreement with Defendants. (Mot. at 5). Talent agency ICM Partners ("ICM") signed a franchise agreement with Defendants several weeks later, and on September 1, 2020, Defendants publicly stated that Plaintiff would be free to sign a franchise agreement on the same terms as ICM. (*Id.* at 6). Plaintiff reached out to Defendants to indicate it would be willing to sign the same terms as ICM and UTA as long as Plaintiff was provided two transitional accommodations for reasonable time to come into compliance with the required 20% ownership cap on affiliates and Endeavor Content could grandfather-in existing projects. (*Id.*) Defendants rejected Plaintiff's requested modifications, explained their requirements, requested additional contract terms involving sanctions and third-party monitoring, and asked Plaintiff to provide further

---

of settlement and the Court's dismissal. (*See* Dkt. Nos. 226, 238.)

1  information on its corporate structure and governance so it could better understand
2  ownership interests. (*Id.* at 6-7; Opp'n at 11.). Soon thereafter, settlement
3  negotiations broke down and Plaintiff filed the instant motion. Former plaintiff CAA
4  also filed a motion for preliminary injunction, but on December 17, 2020, it reached a
5  settlement with Defendants, thus mooting its motion. (Dkt. No. 226).

### III.  LEGAL STANDARD

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S.Ct. 365, 374 (2008); *see Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc) (same). A preliminary injunction "should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S.Ct. 1865, 1867 (1997) (emphasis in original and citation omitted); *see Silvas v. G.E. Money Bank*, 449 Fed. App'x. 641, 644 (9th Cir. 2011) (same). The standards for a temporary restraining order and a preliminary injunction are the same. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n. 7 (9th Cir. 2001) (explaining that the "analysis is substantially identical for [an] injunction and [a] TRO"); *Rowe v. Naiman*, 2014 WL 1686521, *2 (C.D. Cal. 2014) ("The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction."). A preliminary injunction may issue if the moving party can demonstrate (1) "serious questions going to the merits" and (2) that "the balance of hardships tips sharply in the [movant's] favor," provided that the second and fourth *Winter* factors are also satisfied. *Wild Rockies v. Cottrell,* 632 F.3d 1127, 1134-35 (9th Cir. 2011).

26  //
27  //
28  //

## IV. DISCUSSION

### A. The Court lacks jurisdiction to enter an injunction because this matter involves a labor dispute as defined by the Norris-LaGuardia Act.

According to the Norris-LaGuardia Act ("NLGA"), "[n]o court . . . shall have jurisdiction to issue any injunction in a case involving or growing out of a labor dispute except in a strict conformity" with the Act's requirements. 29 U.S.C. § 101. A labor dispute is broadly defined as "any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee." 29 U.S.C. § 113(c); *see Burlington N. R. Co. v. Bhd. of Maintenance of Way Emps.*, 481 U.S. 429, 441 (1987) ("Congress made the definition of 'labor dispute' broad because it wanted it to be broad.").

According to Plaintiff, Defendants "are two labor unions who *represent writers* in the entertainment industry . . . and serve as the *exclusive collective bargaining representatives* for writers in that industry." (FCC ¶ 3 (emphasis added)). Defendants "organized an unlawful *group boycott* to prevent Plaintiffs (and others) from continuing to represent WGA member-writers" unless they agreed to certain prohibitions. (*Id.* at ¶¶ 4, 6 (emphasis added)). Plaintiff also alleges that "[t]his action concerns defendants' . . . wanton abuse of union authority in violation of antitrust law." (*Id.* at ¶ 1). While this case may involve contract negotiations, the ultimate contract negotiated will directly relate to terms and conditions of work and representation for writers in the Guilds, even based upon Plaintiff's characterization of who Defendants are and what they do.

Like *H.A. Artists*, where union members were engaged in a labor dispute because they could only deal with agents who had agreed to avoid conflicts of interest, here, Guild members are involved in a labor dispute because they may only deal with agents and agencies that have agreed to avoid conflicts of interest in both their

4.

packaging fees and their affiliations with content companies by maintaining no more than 20% ownership in production entities.  *See H. A. Artists & Assocs., Inc. v. Actors' Equity Ass'n*, 451 U.S. 704, 719 (1981); FCC ¶ 6, Mot. at 1-2.  The crux of this action involves Plaintiff's assertions that Defendants' demands—demands involving the writers' representation in negotiating and arranging terms and conditions of their employment—violate the Sherman Act.  Plaintiff's allegations that Defendants' boycott is unlawful simply underscores the core of this dispute—the parties have two diametrically opposed views on *how* agents and agencies must comport in the "association or representation" of writers when "negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment." 29 U.S.C. § 113(c).  Disputes involving the contractual means (i.e., the "how") of labor representation does not convert this matter into a non-labor issue.  Undoubtedly, this controversy springs from a labor dispute within the meaning of the Norris-LaGuardia Act.  29 U.S.C. 113(c).

### B. Plaintiff and Defendants are covered parties under the Norris-LaGuardia Act.

Next, the controversy involves "persons who are engaged in the same industry, trade, craft, or occupation" because the parties include writers, talent agents, and talent agencies in the entertainment industry.  29 U.S.C. § 113(b).  And, although Plaintiff argues otherwise, it is immaterial under the NLGA that the Guilds and Plaintiff do not "stand in the proximate relation of employer and employee" because the Act covers "persons participating or interested" in labor disputes. 29 U.S.C. § 113(a), (c).

### C. The Actions Plaintiff Seeks to Enjoin Are Covered by the Norris-LaGuardia Act Such that an Injunction Cannot Issue.

The NLGA states that a Court cannot enjoin actions including "ceasing or refusing to perform any work or to remain in any relation of employment." 29 U.S.C. § 104(a).  Boycotts related to employment conditions are protected activities under this section and cannot be enjoined even when individuals are "engaged in an

5.

unlawful combination or conspiracy." *Id.* § 105. If the conduct falls within Section 4, whether it violates the Sherman Act is irrelevant because an injunction cannot issue. *Marine Cooks & Stewards v. Panama S.S. Co.,* 362 U.S. 365, 371 (1960) ("[E]ven if [the conduct is] unlawful, it would not follow that the federal court would have jurisdiction to enjoin the particular conduct which s[ection] 4 of the Norris-LaGuardia Act declared shall not be enjoined.")

Plaintiff does not deny that Defendants have organized a "group boycott," which the Court finds is protected from injunction under sections 4 and 5 of the NLGA. *See* 29 U.S.C. § 104(a) ("[c]easing or refusing to perform any work or to remain in any relation of employment"); 29 U.S.C. § 105; FCC ¶¶ 4, 6, 30; *see generally* Mot. (referring to Defendants' actions a "boycott" or "group boycott"). Plaintiff asks the Court to enjoin Defendants from "refusing to perform any work" with Plaintiff by requesting that the Guilds cease their refusal to work with non-franchised agencies. Such a request falls squarely within the NLGA such that the Court cannot issue an injunction.

### D. Even if Section 4 of the Norris-LaGuardia Act did not apply, Plaintiff cannot satisfy the Section 7 exemptions.

Defendants also argue that even if the conduct did not fall within Section 4, Section 7 of the NLGA would still preclude injunctive relief. (Opp'n at 15-17). Exceptions to the preclusion of injunctive relief apply only after the Court hears "the testimony of witnesses in open court (with opportunity for cross-examination)" and makes specific findings of fact:

> (a) That unlawful acts have been threatened and will be committed unless restrained or have been committed and will be continued unless restrained . . . ; (b) That substantial and irreparable injury to complainant's property will follow; (c) That as to each item of relief granted greater injury will be inflicted upon complainant by the denial of relief than will be inflicted upon defendants by the granting of relief; (d) That complainant has no adequate remedy at law; and (e) That the public officers charged with the duty to protect complainant's property are unable or unwilling to furnish adequate protection.

29 U.S.C. §107; *see San Antonio Community Hosp. v. S. Cal. Dist. Council of*

6.

*Carpenters,* 125 F.3d 1230, 1234 (9th Cir. 1997).

Even if the Court had found that Section 4 did not cover the dispute here, it is not persuaded that Section 7 changes the analysis. Defendants' group boycott against Plaintiff has not involved unlawful acts or substantial and irreparable injury to property. The Court is persuaded by other courts which have found that "unlawful acts" as is required by section 7 is limited to acts of "violence, intimidation, threats, vandalism, breaches of the peace and criminal acts." *Marine Transp. Lines, Inc. v. Int'l Org. of Masters, Mates & Pilots*, 770 F.2d 1526, 1530 (11th Cir. 1985) (citing cases); *see, e.g.*, *Wilson & Co. v. Birl*, 105 F.2d 948, 952 (3d Cir. 1939) ("unlawful acts . . . do[es] not constitute a general reference to anything that may be considered illegal, but specifically to the acts of violence which the authority of the executive is calculated to control").

When read in light of the Sherman Act, it seems only logical that the NLGA's inclusion of property damage indicates that the Act's injunctive powers are narrowly limited to "violence, intimidation, threats, vandalism, breach of peace and criminal acts," not monetary and/or relational damages resulting from alleged violations of the Sherman Act. As the Supreme Court has noted, "to grant injunctions in cases growing out of labor disputes, merely because alleged violations of the Sherman Act are involved, would run counter to the plain mandate of the [NLGA] and would reverse the declared purpose of Congress." *Milk Wagon Drivers' Union Local 753 v. Lake Valley Farm Prods., Inc.*, 311 U.S. 91, 103, n.18 (1940).

Finally, Plaintiff has not alleged that public officers are unable or unwilling to protect Plaintiff's property because (1) no property damage has been alleged at any point; and (2) Plaintiff has not alleged that public officers have been involved in this matter in any context. The Court notes that neither in its briefing or at oral arguments did Plaintiff allude to any property damage or involvement of public officers who were unwilling to protect Plaintiff's property. Plaintiff has not shown that Section 7 governs here.

7.

In short, the Court lacks jurisdiction to issue an injunction because the NLGA precludes it from doing so. Because injunctive relief is precluded, the Court need not delve into the merits of Plaintiff's FCC or any of the other strict requirements for the issuance of a preliminary injunction.

## V. CONCLUSION

For the reasons stated above, the Court **DENIES** Plaintiff's Motion for Preliminary Injunction.

Dated: December 30, 2020

_____
HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE

8.